ZINSMEISTER ET, ADOPTIONS OF, IN RE.

Probate Court, Columbiana County.

Nos. 1285, 1286 and 1287.   Decided August 30, 1961.

TOBIN, J.   Petition was filed by the step-father, John Zinsmeister, for the adoption of the natural children of his wife. Two of the children, Patricia and Bruce Edward are over 12 years of age and have filed their Answer and Consent to said Adoption.   The third child, Sherry Lynn was under 12 years of age and her consent is not necessary.   The Court finds that service was properly made upon the natural father, Edward Keener; and that said father did enter his appearance in opposition to said adoption.   The Court finds that all parties are in

Court, the papers are in order, the recommendations of the next friend, to-wit, Columbiana County Welfare Department, are in order, and did recommend the adoption, and that the adopting father or plaintiff is a person of good character, and unless barred by the lack of written consent by the father and by Law, that the said John Zinsmeister is a proper person to be the adopting father of said children, and the Court would ordinarily grant said adoption. The Court further finds that the parties were examined separately as well as the two older children, and that all answered that they desire the adoption, the two older children particularly stating to the Court, in the presence of the Court and the opposing attorneys only, that they desire the adoption to be made, and that they have voluntarily given their answer and consent with full knowledge of its consequences.

The Court further finds that by agreement of the parties all records in the Juvenile Court of Columbiana County, Ohio, could be used in connection with this case as evidence in this case as if fully transcribed herein, and that all such entries were entered as such evidence in this case. Specifically referred to were all the entries in Case No. 1767 of the Juvenile Court of Columbiana County, Ohio, being the divorce case between *Edwardina C. Keener* v. *Edward Keener*, and the criminal non-support action in the same Court, and being case No. 7937, *State* v. *Edward Keener*. All references as to Court orders and so forth, will be made from these two files. In addition thereto, the Court by agreement of the parties, is permitted to use the records of the Support Division from Juvenile Court of Columbiana County, Ohio, and being the support record of payments and so forth made by Edward Keener for the support of these children during the past few years, to that Division.

By agreement of all parties and for the sake of clarity, the adopting parties will be called Plaintiff and the natural father will be called Defendant.

It is agreed by the parties that there are two questions involved, one, the best welfare of the children, and two, whether or not the written consent of the father is necessary, and with special reference to Section 3107.06, Sub-section 4, Revised Code, which reads in part, as follows: "If it is alleged in the peti-

tion that one or both of the parents have *wilfully* failed to *properly* support and maintain the child for a period of two years immediately preceding the filing of the petition—."

The Court believes it would be helpful to give a chronology of the various Court actions as found in said record of this Court relative to the dealings of the Defendant and the mother of these children, Edwardina Keener Zinsmeister. Divorce was filed on June 27, 1956. There was an answer filed plus the personal service obtained, the case was certified to the Juvenile Court on November 13, 1956, and the divorce was granted in Juvenile Court on December 31, 1956. In the same, an order of support was made in accordance with the Journal Entry approving the separation agreement of the parties, in which the custody was given to the mother of the children, and the Defendant by agreement and Court order, was to pay $25.00 per week for the support of the children to the Support Division, and certain rights of visitation were agreed upon. On June 24, 1957, and being Juvenile Case No. 7937, the Defendant was arrested for non-support, and he posted bond. On December 9, 1957, a hearing on said charge of non-support and also on a joint contempt action in the divorce case was had. The Defendant at that time was found to be $626.00 in arrears. Payment of alimony was ordered on December 21, 1956 and was paid up by Defendant by signing over his share of certain real estate which in the separation agreement had been reserved for himself. The matter of the rights of visitation was reviewed and certain concessions were made to the Defendant. The next entry appeared on February 8, 1958, in which the Defendant purged himself of contempt by the payment of this money through the property as above stated, and the bond was released. On March 17, 1958, another non-support affidavit was filed. At that time the Defendant was sent to the Woodside Receiving Hospital, on the suggestion of his attorney, for observation inasmuch as there had been an alleged threat with a gun against the Plaintiff, the mother of the children. By Journal Entry on March 18, 1958, the Court found a possible homicidal tendency and did send the Defendant to Woodside Receiving Hospital. The report from the Woodside Receiving Hospital on March 18, 1958, indicted that he had admitted

threatening bodily harm to his ex-wife, who by this time had married Mr. John Zinsmeister, and to the children. He was found to be not psychotic, but found to be' a personality trait disturbance with emotionally instable personality. This by Doctor David Shapira, the Staff physician. When he was released from the Woodside Receiving Hospital, on May 9, 1958, by agreement, certain assets of his were assigned to pay the arrearage of $555.50 in support payments, and that $600.00 remaining from these assets were to be held for future payments of alimony, and the Journal Entry at that time finds him to be guilty of contempt of Court. On October 27, 1958, Defendant was brought in for violation of the support order. Bond was set for $1,500.00 for a hearing on November 3, 1958. It was the finding at that time that he had not paid his support order and he was ordered to sell his car and pay the support order. On June 10, 1958, being prior to the last date mentioned, the Court spelled out in detail, on a hearing on visitation, all the matters of visitation, trying to resolve the continual fight of the Defendant each time the·matter of visitation came about, and established a neutral place, to-wit, the home of his sister, Mrs. Harold Booth, of East Liverpool, Ohio, as a place where the children were to be brought and returned. The next entry appears on July 20, 1960, in which there was a hearing on the modification of certain rights of visitations, and the Court again reviewed the rights of visitation which was journalized on July 30, 1960. A charge of contempt was again filed on September 1, 1960, by the Plaintiff and a cross-petition by the Defendant, dealing with the matter of rights of visitations, which the Court then cleared up.

The record of payments of the Defendant, over a period of time is found to be as follows: June 29, 1957, the Defendant should have paid $656.50, that is 26 weeks of $25.25 per week. During this period of time he only paid $252.50. From July 6, 1957 to December 28, 1957, the Defendant should have paid $656.50. He paid however, $1,268.76, but this payment included the back alimony of $303.00 ordered paid the Plaintiff prior to December, 1957. There was another payment of $309.26, however, all this payment was from his property which he had received from his divorce action, and which was turned over

to his wife under Court pressure to make up these payments. From January 4, 1958 to June 28, 1958, when he should have paid the amount of $656.50, he paid $555.50, leaving an arrearage of $101.00. There was also a bond, which was referred to by Journal Entry prior to this in which $600.00 had been set aside to assure future payments. From July 5, 1958 to December 27, 1958, when a similar amount of money in the amount of $656.50 should have been paid, the Defendant paid nothing. However, his bond of $600.00 was used to pay this monies, leaving a balance of $58.50. From January 5, 1959 to June 27, 1959, he should have paid $656.50. He paid however, $186.85 leaving a balance due of $469.65. From July 4, 1959 to December 26th, 1959, when he should have paid $656.50, he paid only $333.30, leaving another balance of $323.20. From January 2, 1960 to June 25, 1960, he should have paid $656.50, he paid however, only $323.20, leaving a balance of $333.30. From July 2, 1960, to December 31, 1960, he should have paid 27 weeks at $25.25 per week or $681.75. During this period he paid only $505.00, leaving an arrearage of $106.75. From January 7, 1961 to July 6, 1961, he should have paid $656.50, during this period of time he paid only $287.85, leaving another arrearage of $368.65. Leaving a total balance as of July 1, 1961 of $1,923.79. As against this, from the statement of the Defendant himself, his net earnings in 1956 were $4,415.00. In 1957, because of an accident and because of his own failure to properly pay, which resulted in several incarcerations in jail he only earned $1,242.62. He did receive $5,200.00 in cash over an accident, which he proceeded to take with him and leave for California, wrecking the car and expending the money. None of this money became available for the support of the children, or any portion of it went for the children. There is no record of him having earned anything in 1958, mainly because he spent most of the year in and out of jail, and in and out of Woodside Receiving Hospital. In 1959, he earned $4295.75 by his own admission, yet he only paid in 1959 for the first half, $186.85, and for the second twenty six weeks $333.26, even though he earned better than $4,295.75 which was take home pay. In 1960, by his own admission, he earned $5,476.71. During this same period of time, in the first half he paid but $323.20, and in

the second half $505.00 leaving a balance in each case of $323.20 for the first half and $176.75 for the second half. During this period of time he had earned $5,476.71 take home pay. Since the first of January, 1961 through July 1, 1961, he has earned by his own admissions, $2,788.98 take home pay. During this period of time he paid only $287.85. During this period of time, while his boy was in the hospital, and while he, in Court, claimed that he had been wronged by not being notified that his boy was in the hospital, he immediately took off while the boy was still ill, for a three week vacation in Florida, and he made no payments from January until April 6, 1961, despite the very great and evident need, since the boy was in the hospital and ill, that he had made no payments to the hospital, or donation. In fact his remark, which should be a part of the record was that he had made no payments on the hospital bill, that the stepfather must have paid it. Indicating a complete lack of concern as to whether or not money was paid or what had happened in this matter.

As to the first question in the case, to-wit, being for the best interests for the children that they be adopted. Evidence was received from the files indicating that long and bitter and very petty quarrelings resulting in Court hearings on the rights and times of visitation; of the children being torn between the father and the mother. The Court has the testimony of Mr. Cornell Monda, a qualified and licensed psychologist for fourteen years. His examination of both Bruce and Patricia, the two older children, indicates beyond a shadow of a doubt that the children were beginning to have emotional problems, that they were hysterical, that the boy Bruce, particularly, was retrogressing in school due to emotional problems created by this unending struggle between the father and mother and the fact that the father was apparently using, and the Court finds that he was using, the matter of the visitation in the main, for the gratification of himself in the continuance of his dislike and fights with the mother of the children, rather than for the purpose for which they were intended, to-wit, that of the enjoyment of the father with the children and becoming better acquainted with them.

The second problem in the case presents a greater legal

problem. It is the decision of the Court that the father has wilfully failed to properly support and maintain the children, and his consent shall not be required, this is in accordance with Section 3107.06, Revised Code. Let us therefore examine the payments and the earnings of the Defendant: In 1957, he earned $1,242.62 and received $5,200.00 as a result of an accident, none of this $5,200.00 has found its way into the pocket of the mother for the support and betterment of these children, but that between January 5, 1957 and January 5, 1958, there was only paid in monies as the result of application to the Court for proper orders, and pressure therefrom, certain property remaining to the Defendant on the property settlement with regard to the divorce, and that otherwise he was wilfully behind in payments; that it became necessary to put part of his money, to-wit, $600.00, in 1958, obtained from the sale of the real estate remaining to him, to insure the payment in the future, and they were all used up by the end of the year with the exception of $56.50. I think the years, 1959-1960, and to date, 1961 are significant. In 1959 he earned a total of $4,295.75, his payments during that period of time were for the first six months $186.65, and for the second six months $335.30, or a total of $520.15, when he should have paid a total of $1313.00. His earnings during that period of time $4,295.75, take home pay. In 1960 he paid for the first half, $323.30 and for the second half $505.00 or a total of $828.30, at a time when he earned $5,476.71 as take home pay. Even more significant is the first half of 1961, at a time when he complained when his child was in the hospital that he had not been properly notified that the child was there, and at a time when this child was in the hospital. He immediately took off for a three week vacation in Florida where he admitted that he did not pay anything on the hospital bill or make any offer to do so, that he supposed the stepfather had paid. During this six month period he earned $2,788.98, and he paid into for the support of these children just $287.85, when he should have paid $626.00.

This Court has had this question up before, the Court would like reference to its decision in Case No. 1108 of the adoption records, *In re Adoption of James Robin Corey,* in which the same question was brought up, and I quote from that Decision, "when

a man and a woman, parents of children, had a combined income in excess, by their own statement, of $10,000.00 in a two year period, and in one year, 1958, in excess of $6,000.00 before taxes, and pay in during this period only $320.00, there can be no question in this Court's mind that there was wilful failure to properly support, and the Court so finds. The payments, such as they were, were not only in small amounts, but relatively sporatic, and were obviously made under the misguided illusion that as long as some payments were made the requirements to support the child was made with an idea on the litigation that might possibly result in the Court." The opinion of the Court in that case, and in a similar ccase, made prior to that, was filed in this Court *In re the Adoption of Clark*, that these sporatic and totally inadequate payments do not live up to the requirements of the Code, which states in effect that a person shall properly support. This Court wholeheartedly adopts the finding *In re Adoption of Biddle*, 168 Ohio St., 209, and the language and the findings of Judge Herbert in this matter. Reference is particularly made to No. 5 and No. 6 of the syllabus, No. 5 reading, "the phrase in Section 3107.06, Revised Code, properly support and maintain implies personal care and attention by the parent having custody as well as mere financial support, and under No. 6, which reads, "a parent may be found to have wilfully failed to support within the meaning of this section, by such parent knowing of the duty and being able to provide such support voluntarily and intentionally fails to do so. The Court specifically finds under the language of this Supreme Court decision that Edward Keener having ample funds, to-wit, $12,500.24 for his earnings in the two and one-half years between January 1959 and July, 1961, and having paid in, and then irregularly, a total amount of only $1,536.20 for three children, or less than $500.00 for thirty months for each of these children, has wilfully failed to support said child for the two year period as required in the statute, and therefore his consent is not necessary. The Court particularly subscribes to and adopts the language of the Supreme Court and the spirit of that decision, and rejects the decisions offered by the Defendant, being 83 Ohio Law Abs., 14, *In re Adoption Devore*.

The Court by its order that the Defendant was to pay

$25.00 per week for the support of these children has decided what "proper support" should be. The Court also finds that Defendant earned from January 1, 1959 to July 1, 1961, $12,500.24 take home pay. Therefore he had the financial ability to meet this order. The Court further finds Defendant, since he knew of the order and had the ability to meet it, had a choice to make the payments or not to make them. When he failed to make said payments this was an act of his will in making such choice. Therefore he wilfully failed to properly support said children within the meaning of Section 3107.06, subsection 4, Revised Code, and his consent is not necessary.

Specifically then, the Court finds that the father has wilfully failed to properly support these children during the period of time required by the statute, that it is to the best interest of the children that they be adopted by John Zinsmeister, the stepfather, who is a proper person to adopt said child, and that all other requirements of the statute are made. Therefore the adoption of these three children is approved.

Exceptions permitted to Defendant.