IN RE ADOPTION OF HUPP ET AL.

(No. 44495—Decided December 30, 1982.)

*Mr. Charles S. Tricarichi,* for appellant Dale Hupp.

*Mr. James J. Schneider,* for appellee Bruce Grubaugh.

MARKUS, J. Defendant-father appeals from the probate court decision that his children's stepfather could adopt his two minor children without his consent.[1] The father challenges the probate court's ruling that he had failed to communicate with his children without justifiable cause, so that his consent was no longer required for the adoptions pursuant to R.C. 3107.07(A). We agree with the father's contentions, and we conclude that the stepfather's adoption petition should have been dismissed for lack of jurisdiction absent the father's consent. Therefore, we reverse.

I

Defendant and his former wife married in 1965; their son and daughter were

---

[1] After determining the father's consent was not required, the trial court postponed its hearing to determine whether the adoption would be in the best interests of the children under R.C. 3107.14(C), pending the outcome of this appeal. The ruling which denies the father a right to grant or deny consent is appealable as "an order affecting a substantial right made in a special proceeding." R.C. 2505.02. Adoptions are special statutory proceedings, which have no counterpart at common law. *In re Adoption of Biddle* (1958), 168 Ohio St. 209 [6 O.O.2d 4]. This order affects a substantial right. Cf. *Neil* v. *Neil* (1883), 38 Ohio St. 558; *In re Anteau* (1941), 67 Ohio App. 117 [21 O.O. 129]. Decisions reviewing similar orders at this stage of the proceedings include *In re Adoption of Lewis* (1966), 8 Ohio St. 2d 25 [37 O.O.2d 376], and *In re Adoption of Caraballo* (May 25, 1978), Cuyahoga App. No. 37493, unreported.

The children are periodically identified in the record with their stepfather's surname, but the adoption petition and the notice of appeal refer to them with their natural father's surname.

born during that marriage. The marriage was dissolved in 1976. With the agreement of the parties, the wife was awarded custody of their two children, the father had undefined visitation rights, and he was required to pay $50 per month child support. After the dissolution, defendant spent substantial time with his ex-wife and their children, until his ex-wife met and married the petitioner in this case in 1977. Defendant paid the prescribed child support during part of that time, and that amount was later increased by $10 per month to cover arrearages for payments he had missed. During the year preceding this action, all support and arrearage payments were deducted from his salary on a regular basis.

After petitioner married defendant's ex-wife, defendant rarely saw his children. Defendant's ex-wife and her new husband admitted that defendant sent one child a card in 1978, attempted unsuccessfully to see his children in December 1979, and sent both children small money order gifts in 1980. Defendant testified that he continued to send birthday cards and money to the children, but that he had not seen them because his ex-wife and petitioner had turned the children against him. Defendant's ex-wife acknowledged that she did not want the defendant to see their children and that she threatened to seek an order increasing his child support payments if he attempted to see them.

Petitioner filed this adoption proceeding on December 24, 1980, and claimed that defendant had lost his right to object because he failed to communicate with his children without justifiable cause during the preceding year. R.C. 3107.06 provides in pertinent part:

"Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

"(A) The mother of the minor;

"(B) The father of the minor, if the minor was conceived or born while the father was married to the mother, if the minor is his child by adoption, or if the minor has been established to be his child by a court proceeding;"

R.C. 3107.07 states:

"Consent to adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition * * *."

The probate court apparently determined that defendant had not failed "to provide for the maintenance and support of" his two children. But the court ruled that defendant had failed "to communicate" with his children "without justifiable cause" for the statutory period, so his consent to petitioner's adoption of the children was not required.

## II

Defendant-father assigns three errors, which are interrelated, so we shall consider them together:

"I. The trial court erred in its determination as to what constitutes a 'justifiable cause' for failure to communicate with minor children under Ohio Revised Code Section 3107.07(A).

"II. The trial court erred in its determination as to what constitutes 'a failure to communicate' under Ohio Revised Code Section 3107.07(A).

"III. The trial court erred in refusing to dismiss the adoption petition for want of a necessary consent."

In general, the provisions of R.C. 3107.07 "must be strictly construed so as to protect the rights of natural parents to raise and nurture their children," since adoption severs completely the relation-

ship between the children and their natural non-custodial parent. *In re Lindley* (March 20, 1980), Cuyahoga App. No. 40333, unreported; *In re Harshey* (1974), 40 Ohio App. 2d 157 [69 O.O.2d 165]; *In re Schoeppner* (1976), 46 Ohio St. 2d 21 [75 O.O.2d 12] (construing former R.C. 3107.06[B][4], the predecessor of R.C. 3107.07[A]). The fundamental interest of natural parents in the care, custody, and management of their children is constitutionally protected. *Santosky* v. *Kramer* (1982), 455 U.S. 745.

The provisions of R.C. 3107.07(A), which permit adoption without parental consent in specified circumstances, replaced related provisions in former R.C. 3107.06(B)(4) in 1977. The previous statute authorized adoption without consent by a parent who "willfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition." The previous statute did not provide that a parent could lose the right to object to an adoption if that parent failed to communicate with the child. The newer provisions of R.C. 3107.07(A) added that second basis for the forfeiture of a parent's right to object, while reducing the time when the forfeiture would result for either reason from two years to one year.[2]

Counsel have cited no Ohio cases and we have found none which define "failure to communicate" for the purposes of this statute. Defendant-father cites an Alaska Supreme Court decision that "sending presents, cards, and letters" constituted acts which "communicate meaningfully," so a non-custodial parent retained his right to object to adoption under the Alaskan adoption statute. *In re Adoption of K.M.M.* (1980), 611 P.2d 84.[3] The Ohio statute refers to a parent's failure "to communicate," with no modifying word or phrase to describe the nature of that communication.

We construe the Ohio statute to allow adoption without parental consent because the parent has failed to communicate, only if there has been a complete failure to communicate, in the nature of a complete abandonment of current interest in the child. Physical visitation is not necessary to preserve a parent's interest and a parent's right to retain parental status. The legislature did not describe that abandonment of parental status as a failure "to communicate" *meaningfully, significantly,* or *regularly.* We should not add descriptive adverbs which are absent from the legislative language. We should not interpret the plain legislative language to limit acceptable forms of communication, particularly when we are obliged to construe that legislative language strictly against any claim that parental rights have been abandoned or forfeited.

In this case, it is undisputed that defendant-father was providing the full child support agreed upon and ordered, that he sent his children gifts a few days before the adoption petition was filed, and that he tried to visit them precisely one year before the petition was filed. The father testified that he sent each of the children birthday cards during the year preceding the adoption petition. The children's mother denied recollection of those cards without denying that they were received. In view of our interpretation of R.C. 3107.07(A), a finding that this

---

[2] A non-custodial parent forfeits the right to deny consent if that parent fails without justifiable cause to communicate with the minor, even if that parent provides for the minor's support and maintenance. *In re Adoption of McDermitt* (1980), 63 Ohio St. 2d 301 [17 O.O.3d 195].

[3] See, also, *D.L.J.* v. *W.D.R.* (Alaska 1981), 635 P. 2d 834; *In re Adoption of Dove* (1977), 174 Ind. App. 464, 368 N.E. 2d 6; *Graham* v. *Starr* (Ind. App. 1981), 415 N.E. 2d 772; *In re Adoption of McKinstray* (Utah 1981), 628 P. 2d 1286; and *In re Adoption of Mortenson* (N.D. 1982), 317 N.W. 2d 107.

father "failed * * * to communicate" with his two children for the year preceding the adoption petition is contrary to the manifest weight of the evidence. Pursuant to our authority under App. R. 12(C), we conclude that petitioner did not show this father had failed to communicate, so as to lose his parental rights regarding his children's adoption.

Further, we find that petitioner failed to demonstrate that the father's allegedly inadequate communication was "without justifiable cause." The requirement in R.C. 3107.07(A) that a failure "to communicate" must be "without justifiable cause" is equivalent in meaning and effect to the requirement in former R.C. 3107.06(B)(4), that the parent "willfully failed" to act in a manner which avoids forfeiture of parental rights over adoption. *In re Adoption of Kisel* (May 24, 1979), Cuyahoga App. No. 38742, unreported, at fn. 2. A non-custodial parent "willfully failed" to provide maintenance and support for a child only if that parent voluntarily and intentionally failed to do so. *In re Adoption of Biddle* (1958), 168 Ohio St. 209 [6 O.O.2d 4]; *In re Adoption of Lewis* (1966), 8 Ohio St. 2d 25 [37 O.O.2d 376], paragraph three of the syllabus.

In *Kisel, supra,* an aunt petitioned the probate court to adopt her sister's two children, for whom the aunt had been serving as guardian. The aunt claimed that their mother's consent was unnecessary because she had failed without justifiable cause to support or communicate with them for the statutory period. The mother had become a long-distance truck driver. In the year before the petition for adoption, the mother's only communication with the children had been several phone calls, and she provided no financial support despite her $17,000 annual income.

The mother testified in *Kisel* that her efforts to see her children were thwarted by her sister, and that communication was hampered by the mother's unpleasant relationship with her sister and brother-in-law. The sister asserted that she neither encouraged nor discouraged communication between the mother and her children. This court upheld the probate court's finding in *Kisel* that the mother had *not* failed *without justifiable cause* to communicate with her minor children or to provide support for them.

The ruling that this father did not voluntarily and intentionally fail to communicate with his children is also demonstrated by this court's decision in *In re Lindley, supra.* In that case, the mother's second husband sought to adopt the father's son without the father's consent pursuant to R.C. 3107.07(A). The natural father claimed that he had justifiable cause for his complete failure to provide financial support and his minimal communication with his son for more than two years, because his former wife took their son out-of-state, returned gifts he had sent their son, and otherwise hampered his efforts to see their son. In reversing an order that the father had lost his right to consent, and remanding the case for a further hearing on the "justifiable cause" issue, this court said in *Lindley*:

"Where a custodial parent has, through her own substantial efforts, deprived the non-custodial parent of the opportunity of enjoying a meaningful relationship with his child and further has actively interfered with his attempts, however meager, to provide support and maintenance to the child, the law should not further reward her discordant efforts by countenancing a termination of the non-custodian's parental rights in a non-consensual adoption proceeding." *Id.* at 12.

This court then concluded in *Lindley*:

"[P]roof of significant interference by a custodial parent with a non-custodial parent's efforts to exercise parental rights and fulfill parental obligations may constitute the 'justifiable cause' for non-support required by R.C. 3107.07(A) to

preclude an adoption without a non-consenting parent's approval." *Id.* at 12-13.

In the present case, the children's mother acknowledged that she declined to permit visitation by the father one year before the adoption petition, that she threatened to seek an increase in the father's child support payments if he insisted upon seeing his children, that she told the father she did not want him to see his children, and that the father's relationship with his ex-wife had deteriorated after she met and married petitioner.

Less compelling evidence was found sufficient in *Kisel, supra,* to prevent the forfeiture of the parental right to consent by R.C. 3107.07(A). Less persuasive evidence was sufficient in *Lindley, supra,* to require a rehearing on the "justifiable cause" issue. We conclude that uncontroverted evidence in this case required a finding that defendant did not fail to communicate with his children "without justifiable cause." The contrary finding by the probate court was against the manifest weight of the evidence.

Finally, defendant-father contends that the trial court erred in refusing to dismiss the adoption petition for lack of the statutorily required consent. This court has previously ruled that the probate court lacks jurisdiction and must dismiss a petition for adoption, where the child is in the custody of one natural parent and the other natural parent has not consented to the adoption pursuant to R.C. 3107.06. *In re Harshey, supra.* Since we have determined that defendant did not fail to communicate with his children without justifiable cause, and that his consent to their adoption was therefore required, the probate court should have dismissed the adoption petition when he refused to give that consent.

The probate court did not reach the question whether the proposed adoption would be in the best interests of the children, and we can express no opinion on that subject. The legislature has directed that no adoption of a minor child can occur without consent by each of the child's natural parents, unless the parent has effectively abandoned the child in the manner specified by the statute, regardless of the child's best interests. In so providing, the legislature has assigned the parent's right to continuing parental status a paramount position, so long as that parental status is not forfeited by the parent's own voluntary and willful inaction.

We conclude that each of defendant's three assignments of error has merit. We reverse the judgment of the probate court and we enter final judgment dismissing the adoption petition.

*Judgment reversed.*

PRYATEL, C.J., concurs.

PATTON, J., dissents.

PATTON, J., dissenting. Respectfully, I dissent.

The majority has chosen to equate the rights and duties of a parent under the newly worded statute to that of the former statute. The statute, in my opinion, clearly does not require "abandonment" by a parent to permit the court to waive his consent.

The use of the term "failed without justifiable cause" is new to the statute as passed in 1977. Although the language was changed from "willfully failed" in former R.C. 3107.06(B)(4), the purpose behind both provisions is the same. *In re Adoption of McDermitt* (1980), 63 Ohio St. 2d 301 [17 O.O.3d 195]. The change in the language was apparently made to clarify when failure to support or communicate with the children by the parent is excusable.

The phrase "failed * * * to communicate" as used in R.C. 3107.07(A) has not been defined by statute or case law since the statute's enactment in 1977. The statute requires a "period of at least one

year immediately preceding the filing of the adoption petition * * *" without communication with the child in order to satisfy the waiver of parental consent to the adoption. This same provision speaks to lack of maintenance and support being grounds for waiving parental consent.

The Commissioners' Note to the consent section of the Uniform Adoption Act states that aside from the termination of parental rights where the child had been abandoned or where the parent has deserted the child, the subsection (stating a failure to communicate without justifiable cause) is designed to permit the court to find that consent to adoption is unnecessary without finding that the parent has "abandoned" the child if the court finds the existence of certain facts of a prescribed duration (Uniform Adoption Act, Section 6, 9 U.L.A. 19 [1979]). Our legislature has chosen failure to communicate without justifiable cause for one year. This standard cannot be equated to abandonment.

In the cases cited by the majority, the applicable statutes differ from Ohio's by qualifying the type of communication, *i.e.,* significant. Hawaii has used the term "communication" without qualification in its statute. The Supreme Court of Hawaii defined the phrase "has failed to communicate" to mean:

"* * * the failure on the part of a parent who is able to do so, either through neglect or refusal, to maintain any contact which would provide the opportunity to express or to show parental presence, concern, love, care and filial affection to his child." *In re Adoption of Male Child* (1975), 56 Haw. 412, 539 P. 2d 467, paragraph four of the syllabus.

The Ohio Supreme Court has construed willful failure to exist when a parent knows of the duty and, being able to provide it, voluntarily and intentionally fails to do so. *In re Adoption of Biddle* (1958), 168 Ohio St. 209 [6 O.O.2d 4]; *In re Adoption of Lewis* (1966), 8 Ohio St. 2d 205 [37 O.O.2d 376]. Here, appellant

made no efforts to see his children during the years 1979, 1980 and 1981. His only contact consisted of three birthday cards and Christmas cards. The appellant and his ex-wife gave conflicting testimony as to the consistency of this contact. He testified that he was denied visitation once in 1979 and received threats from petitioner and his wife. However, he took no steps to contact his children directly and took no legal steps to enforce his visitation rights. It is clear that the children were in the same area as the appellant and he knew their whereabouts.

Relatively small sporadic support payments by one under a duty to support constitute sufficient willful failure to waive consent. *In re Adoptions of Zinsmeister* (P.C. 1961), 87 Ohio Law Abs. 129; *In re Adoption of Corey* (P.C. 1959), 88 Ohio Law Abs. 186.

A parent who for seven years prior to filing the adoption petition refused to support the child, except for occasional Christmas gifts, has willfully failed to support. *In re Adoption of Krisher* (1958), 107 Ohio App. 109 [7 O.O.2d 465].

*Syversten* v. *Carrelli* (1979), 67 Ohio App. 2d 105 [21 O.O.3d 418], deals with a failure to communicate. The father did not communicate with his son from October 1974 (the date of his divorce) until August 1978 (the date of the adoption petition) — seeing him only once, immediately prior to the filing of the petition. The court held that the finder of fact was justified in determining, pursuant to R.C. 3107.07(A), that appellant's consent was unnecessary. The trial court also considered that appellant had failed to support the child.

*In re Adoption of Baker* (1955), 100 Ohio App. 146 [60 O.O. 137], held that mere failure to make payments for support is not sufficient to constitute "willful failure."

*Biddle, supra,* held that willful failure to support exists when a parent knows of the duty to provide support and, having

the ability to support, intentionally fails to do so.

In *In re Adoption of Kisel* (May 24, 1979), Cuyahoga App. No. 38742, unreported, the mother's consent was not waived due to her having justifiable cause to be away from her children. In *Kisel,* the mother, a long-haul truck driver, became unable to care for her children and placed her children in the homes of close relatives. The relationship with one of the guardians deteriorated and her efforts to see the children were actively thwarted. She was limited to phone contacts. The court held telephone communication was sufficient to require a mother's consent when her efforts to see her children were thwarted by persons petitioning to adopt. In the case at bar, there was sufficient evidence to show the appellant took no active interest in communicating with his children; he admitted to seeing his children in 1978 but did not remember any details. He admitted to not seeing them since. He admitted he made no effort to contact his children after 1978 by phone or in person; he took no steps, personally or legally, to maintain a regular relationship with his childern. There is testimony by the mother the cards were received sporadically. He testified he sent them every year. He admitted that he knew he had recourse in the courts to deal with a refusal by the mother to see the children, but he failed to take advantage of it. The only evidence of communication is the money orders of December 21, 1980. It appears from the record that there are many instances where appellant admitted he failed to communicate and, whatever his fears, chose not to seek legal remedies.

The adoption hearing presented an opportunity for any testimony relevant to justifiable reasons why appellant could not and did not see his children. He made several statements that he did not see them. Further, he presented no testimony that he was prevented from making contact or was unable to make contact. There is only the single instance, December 1979, of his being refused permission — this was due to previous plans of the mother. He made no further effort.

The same standard should be used whether we are determining a lack of support or a lack of communication. The former statute, R.C. 3107.06(B)(4), which admittedly dealt with only support and maintenance, has been interpreted in several cases by Ohio courts allowing for varying degrees of care.

It becomes clear that the courts have broad discretion when determining "proper maintenance and support" as well as "failure to communicate."

In *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366], the court held that on the trial of a case, either civil or criminal, the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of fact. In adoption cases, the determination of willful failure (now "failed without justifiable cause") raises a question of fact for the determination of the probate court. *Biddle, supra; Lewis, supra.* As long as the evidence is sufficient to support a verdict, absent prejudicial error, an appellate court may not reverse.

In this case, the trial judge had sufficient evidence which tended to prove that the father had failed to communicate without justifiable cause with his children.

I would affirm the decision of the trial court.