[Cite as *In re Adoption of L.S.*, 2020-Ohio-224.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:  THE ADOPTION OF:         CASE NO. 5-19-20

    L.S.

[CODY SCHOONOVER - APPELLANT]      O P I N I O N

Appeal from Hancock County Common Pleas Court
Probate Division
Trial Court No. 20185044

Judgment Affirmed

Date of Decision:  January 27, 2020

APPEARANCES:

    *Drew J. Mihalik* for Appellant

    *James W. Fruth* for Appellee

**WILLAMOWSKI, J.**

{¶1} Respondent-appellant Cody R. Schoonover ("Schoonover") appeals the judgment of the Probate Division of the Hancock County Court of Common Pleas ("trial court"), alleging that the trial court erred in determining that paternal consent was not necessary for the adoption of L.S. and in determining that there was not justifiable cause for his failure to make more than de minimis contact with L.S. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Schoonover and Kayla N. Sealey ("Kayla") are the biological father and biological mother of L.S. Doc. 2. In 2016, there was an order of visitation in place under which Schoonover could visit L.S. for two hours on Wednesdays and every other Sunday. January 4 Tr. 36. Under this order, Schoonover's visits with L.S. had to be supervised. *Id*. at 36. According to Kayla, these visits were supervised because Schoonover "ha[d] a history of drug and alcohol abuse." May 6 Tr. 24. In January of 2017, Schoonover was caught operating a vehicle impaired. January 4 Tr. 30, 67. After this incident, Schoonover alleged that Kayla stopped allowing Schoonover to visit with L.S. *Id*. at 67.

{¶3} Schoonover then filed a contempt motion with the Juvenile Division of the Hancock County Court of Common Pleas ("Juvenile Division"). *Id*. at 67-68, 82. The parties subsequently worked out an agreement, and Schoonover voluntarily dismissed his contempt motion. *Id*. Under this agreement, visitation between

-2-

Schoonover and L.S. occurred at Schoonover's parent's house. *Id*. at 103. In July of 2017, Kayla married Bradley M. Sealey ("Bradley"). Doc. 1. May 6 Tr. 7. At this time, L.S. and Kayla began to live with Bradley. Doc. 1. May 6 Tr. 18.

{¶4} On September 23, 2017, Schoonover had his last visitation with L.S. January 4 Tr. 37. On September 26, 2017, Schoonover inadvertently sent Kayla a text that appears to have been intended for another person. Ex. B. In this text, Schoonover appeared to be making an offer to sell drugs. Ex. B. Kayla testified that this led her to believe that he was "not finished using drugs." May 6 Tr. 35. Kayla then informed Schoonover's father that L.S. was not going to visit at their house with Schoonover any longer. *Id*. In December of 2017, Schoonover filed a contempt motion with the Juvenile Division in Case No. 20144197, alleging that Kayla was interfering with his visitation. *Id*. at 69-70.

{¶5} In between December of 2017 and February of 2018, Schoonover was not employed. *Id*. at 21. In February of 2018, Schoonover was also caught driving without a license. Ex. X. At this time, the Juvenile Division issued a temporary order of visitation in Case No. 20144197. January 4 Tr. 70, 74. Under this order, Schoonover was permitted to have supervised visits with L.S. at Harmony House. *Id*. Schoonover testified that visitation was to happen at Harmony House because of his substance abuse issues. *Id*. However, Schoonover testified that he never visited L.S. at Harmony House. *Id*. at 72. Schoonover stated that this was, in part, because he was incarcerated in April of 2018. *Id*.

{¶6} In May of 2018, Schoonover was charged with forgery and breaking and entering. *Id*. at 99. Pursuant to a motion in lieu of conviction, Schoonover went to a rehabilitation center in New York to address his substance abuse issues. *Id*. at 99-100. He remained in rehabilitation from May to August of 2018. *Id*. at 23. When Schoonover returned in August of 2018, the motions filed in Case No. 20144197 were still pending before the Juvenile Division. *Id*. at 80.

{¶7} On October 24, 2018, Bradley initiated Case No. 20185044, which is now before this Court, by filing a petition to adopt L.S. Doc. 1. There is no evidence in the record that indicates that Schoonover visited L.S. in between his return from New York in August of 2018 and the filing of this petition in October of 2018. On November 1, 2018, Schoonover filed an objection to the adoption of L.S. Doc. 10. In his response to this objection, Bradley alleged that Schoonover "failed, without justifiable cause, to have contact with [L.S.] for at least a year." Doc. 13.

{¶8} On November 27, 2018, the Juvenile Division held a hearing on the motions that had been filed in Case No. 20144197. *Id*. at 79. Ex. 2. On December 13, 2018, the Juvenile Division issued a Consent Magistrate's Order Judgment Entry in Case No. 20144197. Ex. 2. The trial court then held hearings on Bradley's petition for adoption in Case No. 20185044 on January 4, 2019 and May 6, 2019. Doc. 28, 29. At the hearings on this petition, the trial court heard testimony from Schoonover, Kayla, and Bradley. Further, the trial court received evidence that documented Schoonover's child support payment history. Ex. C. In between

October of 2017 and October of 2018, Schoonover made one documented child support payment of $164.00 in August of 2018. May 6 Tr. 21. Ex. C.

{¶9} At both of these hearings on this petition, Schoonover requested that the trial court take judicial notice of the file in Juvenile Division Case No. 20144197. January 4 Tr. 12. May 6 Tr. 60-61. Schoonover asserted that his filings with the Juvenile Division in Case No. 20144197 should qualify as more than de minimis contact under R.C. 3107.07(A) that occurred within the year preceding the filing of Bradley's petition. Doc. 20. The trial court ultimately denied Schoonover's request to take judicial notice of Case No. 20144197. Doc. 20.

{¶10} The trial court issued its judgment entry for Case No. 20185044 on May 23, 2019. Doc. 20. The trial court found that the last time that Schoonover had contact with L.S. was in September of 2017. Doc. 20. The trial court then found that Schoonover failed to have contact with L.S. for one year prior to the filing of Bradley's petition. Doc. 20. For this reason, the trial court determined that Schoonover's consent was not required for the adoption to proceed. Doc. 20. The appellant filed his notice of appeal on June 21, 2019. Doc. 22. On appeal, Schoonover raises the following assignments of error:

**First Assignment of Error**

**The trial court abused its discretion in finding that paternal consent to the adoption of L.S. was not necessary.**

**Second Assignment of Error**

**The trial court's finding that appellant failed to demonstrate justifiable cause pursuant to R.C. 3107.07 was against the manifest weight of the evidence.**

*First Assignment of Error*

{¶11} Schoonover subdivides this assignment of error into two separate arguments. First, he asserts that the trial court erred by failing to take judicial notice of a prior case that had been filed in the Juvenile Division. Second, he alleges that the filing of this action within one year before the filing of Bradley's petition qualifies as more than de minimis contact under R.C. 3107.07. For the sake of clarity, we will analyze each of these arguments in separate analyses.

First Argument

{¶12} In this argument, Schoonover alleges that

**[t]he Trial Court erred in not taking judicial notice pursuant to Evidence Rule 201 of a Hancock County Juvenile Court proceeding involving L.S., which was ongoing during the alleged statutory one-year period pursuant to R.C. 3107.07, and further, pending at the time of the filing of and the pendency of the petition to Adopt * * *.**

Appellant's Brief, 6.

Legal Standard

{¶13} "Judicial notice allows a court to accept, 'for purpose of convenience and without requiring a [party's] proof, * * * a well-known and indisputable fact.'" *In re C.Y.*, 6th Dist. Lucas No. L-13-1184, 2014-Ohio-1144, ¶ 16, quoting *State v.*

Case No. 5-19-20

*Blaine*, 4th Dist. Highland No. 03CA9, 2004-Ohio-1241, ¶ 12. Under the Ohio

Rules of Evidence,

> **"[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."**

Evid.R. 201(B). Under Evid.R. 201(D), "[a] court shall take judicial notice if

requested by a party and supplied with the necessary information." Evid.R. 201(D).

Under Ohio law, the general rule is that

> **'[a] trial court may not take judicial notice of prior proceedings in the court, but may only take judicial notice of prior proceedings in the immediate case.'** *Diversified Mortgage Investors, Inc. v. Athens Cty. Bd. of Revision* **(1982), 7 Ohio App.3d 157, 159, 454 N.E.2d 1330 [(4th Dist.)].** *See, also, D & B Immobilization Corp. v. Dues* **(1997), 122 Ohio App.3d 50, 53, 701 N.E.2d 32 [(8th Dist.)];** *In re Knotts* **(1996), 109 Ohio App.3d 267, 271, 671 N.E.2d 1357 [(3d Dist.)];** *Woodman v. Tubbs Jones* **(1995), 103 Ohio App.3d 577, 580, 660 N.E.2d 520 [(8th Dist.)];** *State v. Velez* **(1991), 72 Ohio App.3d 836, 838, 596 N.E.2d 545 [(3d Dist.)];** *Kiester v. Ehler* **(1964), 9 Ohio App.2d 52, 56, 222 N.E.2d 782 [(2d Dist.)];** *Burke v. McKee* **(1928), 30 Ohio App. 236, 238, 164 N.E. 776 [(4th Dist.)]. The rationale for this holding is that, if a trial court takes notice of a prior proceeding, the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court.** *Dues, supra***, at 53, 701 N.E.2d 32.** *See Deli Table, Inc. v. Great Lakes Mall* **(Dec. 31, 1996), [(11th Dist.)] Lake * * * No. 95-L-012 [1996 WL 761984], at 13;** *Phillips v. Rayburn* **(1996), 113 Ohio App.3d 374, 379, 680 N.E.2d 1279 [(4th Dist.)].**

*Pollard v. Elber,* 2018-Ohio-4538, 123 N.E.3d 359, ¶ 14 (6th Dist.). *See Ohio*

*Medical Indemnity, Inc. v. Poe*, 3d Dist. Hancock No. 5-77-26, 1978 WL 215841,

*5 (May 24, 1978) (holding that "[a] court cannot take judicial notice of other cases in that court but must require proof of such cases by evidence or stipulation * * *.").

{¶14} However, on this issue, the Supreme Court of Ohio has also held that "a trial court is not required to suffer from institutional amnesia." *Indus. Risk Insurers v. Lorenz Equip. Co.*, 69 Ohio St.3d 576, 580, 635 N.E.2d 14, 18 (1994).

> **'[I]t is axiomatic that a trial court may take judicial notice of its own docket'—including the docket in a separate case. *Indus. Risk Insurers*[, *supra*, at 580]. The trial court cannot take judicial notice of a docket 'for the truth of the matters asserted in the other litigation,' however, but only 'to establish the fact of such litigation.' *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, 877 N.E.2d 968, ¶ 20, quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992), and *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991).**

*Pollard* at ¶ 17. *See Natl. Distillers & Chem. Co. v. Limbach*, 71 Ohio St.3d 214, 643 N.E.2d 101 (1994) (holding that the law allows a court to take "'judicial notice' of [its] docket records" but that the relevant "cases do not state that we may take judicial notice of evidence contained in the transcripts.").

Legal Analysis

{¶15} In this case, Schoonover requested that the trial court take judicial notice of Case No. 20144197. May 6 Tr. 61. In the January 4, 2019 hearing, Schoonover's counsel stated the following:

> **Mr. Schoonover has been actively involved with this child in case number 20144197 of the Hancock County Juvenile Court. The Court that Your Honor is the Judge over. And throughout this case we're going to respectfully request that the Court would take**

> **judicial notice of that *file*, and there will be the most recent judgment entry demonstrating Mr. Schoonover's involvement.**

(Emphasis added.)  January 4 Tr. 12.  Similarly, at the May 6, 2019 hearing, Schoonover's counsel made the following request:

> **Your Honor, as the Judge in this Court, you would have reviewed that case from start to finish.  This case has been in court three times.  That *case file* is pertinent because one, it shows that Mr. Schoonover initiated the action based upon not seeing the child, which was an issue in the case and has been testified now on two separate periods.  This was filed as an agreement of the parties.**

(Emphasis added.)  May 6 Tr. 61-62.

{¶16} In the first request, Schoonover's counsel stated that the judgment entry of this action was going to be introduced as evidence, which would have been sufficient to prove the existence of Case No. 20144197 for the purposes of this litigation.  In both of these requests, Schoonover asked for the trial court to take judicial notice of the file.  Thus, he did not simply ask for the trial court to take judicial notice of the existence of a prior action on its docket.  Rather, Schoonover asked the trial court to take judicial notice of the content of the case file.  Under Ohio law, trial courts "cannot take judicial notice of a docket 'for the truth of the matters asserted in the other litigation,' however, but only 'to establish the fact of such litigation.'"  *Pollard, supra*, at ¶ 17 quoting *Granville, supra*, at ¶ 20.  Thus, the trial court did not err in declining to take judicial notice of the content of the file for Case No. 20144197.

{¶17} Regardless of whether the trial court had erred in failing to take judicial notice of this prior case file, Schoonover was still able to argue that his filings in Case No. 20144197 were more than the de minimis contact that is required under R.C. 3107.01(A). In response to Schoonover's request for judicial notice, Bradley did not object to the trial court "considering the fact that [Schoonover] filed a motion." May 6 Tr. 65. Bradley only objected to the trial court "taking judicial notice of the entire file * * *." May 6 Tr. 65.

{¶18} Further, the trial court heard testimony from Schoonover and Kayla regarding the circumstances that led Schoonover to file his contempt motion in Case No. 20144197. January 4 Tr. 68-69, 70-71, 74, 79-83. May 6 Tr. 35-36. The trial court also heard testimony regarding the temporary order that the Juvenile Division issued and the failure of Schoonover to exercise visitation pursuant to this temporary order. January 4 Tr. 68-69. May 6 Tr. 38. Schoonover also introduced into evidence the judgement entry from Case No. 20144197, which the Juvenile Division issued on December 13, 2018. Ex. 2. May 6 Tr. 116.

{¶19} Because of this evidence at the hearing, the trial court was able to consider the existence of Case No. 20144197 in determining whether paternal consent was required for this adoption to proceed. Further, the trial court considered testimony that detailed the circumstances surrounding this prior action. After reviewing the evidence in the record, we conclude that the trial court complied with

Ohio law in denying Schoonover's request to take judicial notice of the content of the file in Case No. 20144197. For these reasons, this argument is without merit.

## Second Argument

{¶20} In his next argument, Schoonover alleges that

**[t]he existence of a prior, pending, and ongoing Hancock County Juvenile Court custody matter, instigated by Appellant Cody Schoonover (biological father) pro se and specifically addressing parenting and companionship time with L.S., through the statutory one-year period, constituted de minimis contact pursuant to R.C. 3107.07.**

Appellant's Brief, 10.

## Legal Standard

{¶21} "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa*, 23 Ohio St.3d 163, 164, 492 N.E.2d 140 (1986). "Under most circumstances, both of a minor's natural parents must provide written consent prior to the adoption of that minor." *In re Adoption of S.S.*, 2017-Ohio-8956, 101 N.E.3d 527, ¶ 16 (3d Dist.). However, R.C. 3107.07(A) provides the following exception to this general rule:

**Consent to adoption is not required of any of the following:**

**(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption**

> **petition or the placement of the minor in the home of the petitioner.**

R.C. 3107.07(A). The application of R.C. 3107.07(A) involves a two-step analysis.

*In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 23.

> **The first step involves deciding a factual question—in this case, whether the parent willfully had failed to provide more than de minimis contact with the minor child. 'A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision * * *.' In the second step, if a probate court finds a failure to provide more than de minimis contact, the court then determines the issue of whether there is justifiable cause for the failure. A probate court's decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the evidence.**

*In re Adoption of K.C.*, 3d Dist. Logan No. 8-14-03, 2014-Ohio-3985, ¶ 20.

{¶22} "Under the abuse of discretion standard, an appellate court is not to substitute its judgment for the trial court's judgment." *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339, ¶ 7 (3d Dist.). "Thus, a mere error of judgment does not rise to the level of an abuse of discretion." *In re A.T.*, 3d Dist. Crawford Nos. 3-19-07, 3-19-08, and 3-19-09, 2019-Ohio-5038, ¶ 13, quoting *Siferd v. Siferd*, 2017-Ohio-8624, 100 N.E.3d 915, ¶ 16 (3d Dist.). "[T]o constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or capricious." *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 29, quoting *Southern v. Scheu*, 3d Dist. Shelby No. 17-17-16, 2018-Ohio-1440, ¶ 10.

Legal Analysis

**{¶23}** When he testified at the hearing on Bradley's petition, Schoonover admitted that he had not had visitation with L.S. since September 23, 2017. January 4 Tr. 37. Thus, Schoonover did not visit with L.S. at all in the one-year period before Bradley filed his petition on October 24, 2018. Doc. 1. Schoonover stated that he had not called, texted, or communicated with L.S. in this timeframe. January 4 Tr. 37. Similarly, Schoonover also testified that he did not send letters, gifts, or packages to L.S. in this yearlong period. *Id*. at 38, 40. Further, Bradley and Kayla testified that Schoonover did not contact, communicate with, or visit L.S. in the year preceding the filing of Bradley's petition. May 6 Tr. 10-12, 28, 31-33. Bradley and Kayla also stated that they did not receive any packages, emails, texts, letters, calls, packages, or gifts from Schoonover to L.S. *Id*. at 10-12, 33.

**{¶24}** Schoonover argues that a contempt motion that he filed with the Juvenile Division in December of 2017 qualifies as more than de minimis contact with L.S. that is required under R.C. 3107.07(A).[1] However, the filing of a contempt motion with the Juvenile Division is contact with a court, not contact with L.S. *See In re Adoptions of Doyle*, 11th Dist. Ashtabula Nos. 2003-A-0071, 2003-A-0072, 2004-Ohio-4197, ¶ 19 (holding that "a [parent's] letter requesting visitation sent to

---

[1] Most of the arguments that Schoonover advances to support this assertion are, in fact, arguments that address whether his failure to engage in more than de minimis contact was justified by the circumstances surrounding this case. We will consider these arguments under his second assignment of error wherein he asserts that there was justifiable cause for his lack of contact with L.S.

the court cannot be deemed communication with the child, as the child remains unaware that the parent is attempting meaningful communication."). Thus, the action of filing a contempt motion is not, in and of itself, more than the de minimis contact that is required under R.C. 3107.07(A).[2]

{¶25} Given the evidence produced at these hearings, we conclude that the trial court did not abuse its discretion in finding that Bradley had established, by clear and convincing evidence, that Schoonover did not have more than de minimis contact with L.S. in the one-year period before Bradley filed his petition for adoption. Thus, this argument is without merit. For these reasons, Schoonover's first assignment of error is overruled.

*Second Assignment of Error*

{¶26} Schoonover argues that the trial court's determination—that there was not justifiable cause for his failure to have more than de minimis contact with L.S.— was against the manifest weight of the evidence. We will herein reincorporate and then supplement the legal standard set forth under the second argument in Schoonover's first assignment of error.

---

[2] This does not mean that the filing of a motion addressing parental rights is insignificant in the process of determining whether parental consent is necessary for an adoption to proceed. *See In re Adoption of S.S.*, *supra*. Depending on the facts of the case, the filing of such a motion could be evidence of significant interference with a parent's visitation rights or of a justifiable cause for a parent's failure to engage in more than de minimis contact with a child. We will consider the significance of the filing of Schoonover's contempt motion in our analysis of his second assignment of error.

Legal Standard

**{¶27}** "In determining whether a natural parent's failure to have more than de minimis contact was justified, the central question is whether there was a significant interference with visitation and communication and not whether it was possible for the natural parent to have done more to overcome the interference with visitation and communication." *In re Adoption of C.N.A.*, 2018-Ohio-897, 108 N.E.3d 553, ¶ 9 (3d Dist.), quoting *In re J.P.E.*, 11th Dist. Trumbull No. 2016-T-0113, 2017-Ohio-1108, ¶ 17. An appellate court will not reverse a trial court's determination as to whether there was justifiable cause for a parent's failure to have more than de minimis contact with his or her child "unless [that] determination is against the manifest weight of the evidence." *In re K.C.*, *supra*, at ¶ 20.

> **In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial.**

*In re Adoption of C.N.A.* at ¶ 9, quoting *In re Adoption of N.T.R.* 10th Dist. Franklin No. 16AP-589, 2017-Ohio-265, ¶ 11.

Legal Analysis

**{¶28}** Schoonover makes several arguments against the trial court's determination that his failure to contact L.S. was without justifiable cause. First, Schoonover argues that the trial court did not consider his actions in Case No.

20144197 in deciding whether justifiable cause existed in this case.  However, the trial court, in its judgment entry, did consider the contempt motion that Schoonover filed.  Doc. 20.  The trial court noted that Kayla was never held in contempt; that their disputes ended with agreements between the parties; and that Schoonover failed to contact L.S. in spite of these agreements.  Doc. 20.

{¶29} Second, Schoonover alleges that he attempted to "open a line of communication" between himself and L.S. by texting Kayla and Bradley in the spring of 2018.  January 4 Tr. 62, 64.  He argues that these efforts were thwarted by Kayla and Bradley's failure to respond.  Schoonover points to two text messages that he sent to Kayla in February and May of 2018.  Ex. 4.  In these text messages, he asked for L.S.'s social security number and stated that he wanted this information to secure unspecified veteran's benefits for L.S.  Ex. 4.  Kayla did not respond to these texts with L.S.'s social security number.  Ex. 4.  Schoonover similarly texted Bradley to ask for this information in April of 2018.  Ex. 1.  Bradley also did not respond with L.S.'s social security number.  Ex. 1.

{¶30} Schoonover suggests that Kayla and Bradley's refusal to respond to these texts represents an interference in communication between him and L.S.  Appellant's Brief, 17.  However, Schoonover's text messages do not contain a message for L.S.  Ex. 1, 4.  Kayla also testified that she did not respond with L.S.'s social security number because she did not trust Schoonover with that information and did not believe that L.S. would, in fact, receive any of these promised benefits.

May 6 Tr. 40-41. Kayla also noted that, at this time, Schoonover had a charge of forgery against him. *Id*. at 31.

**{¶31}** Further, Kayla stated that she did not change her phone number or block Schoonover's phone calls, though she did block Schoonover on Facebook. *Id*. at 18, 26, 52. Ex. V. Kayla and Bradley testified that they did not hide any communications, letters, gifts, or packages from Schoonover for L.S. *Id*. at 9-11, 33. Schoonover knew where L.S. lived and went to school. May 6 Tr. 9, 26. January 4 Tr. 40. The evidence in the record also indicates that Schoonover was in touch with a number of other individuals on social media during this timeframe. Ex. C, P, Q, T, S.

**{¶32}** Third, Schoonover argues that Kayla interfered with his ability to visit and contact L.S. To support this assertion, he points to the contempt motion that he filed with the Juvenile Division in December of 2017. January 4 Tr. 69. Schoonover testified that he filed this contempt motion because Kayla was causing difficulties with his visitation. May 6 Tr. at 68-69. Kayla testified that this issue arose after she received a text from Schoonover that led her to believe that he was still using drugs. May 6 Tr. 35. After she received this text, Kayla indicated that she did not want L.S. to have supervised visits with Schoonover at Schoonover's parent's house. *Id*. Through this litigation, Schoonover was, by February of 2018, able to secure a temporary order from the Juvenile Division that gave him the right to supervised visits with L.S. at Harmony House. January 4 Tr. 70-71.

{¶33} However, according to Schoonover's testimony, he never availed himself of his right to visit with L.S. at Harmony House. *Id*. at 99. Further, there is no testimony from Schoonover that indicates that he attempted to communicate with or contact L.S. during this timeframe. Thus, even if Kayla unjustifiably interfered with Schoonover's visitation in December of 2017, this interference does not explain Schoonover's failure to attempt to contact L.S. during this timeframe. *See In re K.D.*, 6th Dist. Lucas No. L-09-1302, 2010-Ohio-1592, ¶ 21-22. (holding that a letter from the mother's attorney that cancelled visitation was not justifiable cause for a father's failure to attempt to make contact with his child.). This alleged interference also does not explain why Schoonover failed to exercise his visitation rights with L.S. after the temporary order was in place.

{¶34} Fourth, Schoonover points to a series of texts that Kayla exchanged with his father, Robert Schoonover ("Robert"), in July of 2018. These texts read, in their relevant part, as follows:

> **[Kayla]: In order to reinitiate visits with you and [your wife], my attorney recommends that you take [L.S.] to dinner before we set in stone more or less. So, if you want to take him either tomorrow evening * * * or * * * next Tuesday * * * if either of those work for you.**
>
> **[Robert]: Tomorrow will be fine Thanks**
>
> **[Kayla]: Ok you can pick him up at our house at 5 then.**
>
> **[Robert]: Ok**

> **[Kayla]: Also, we do not want [L.S.] speaking with [Schoonover], FaceTime, or on the phone etc, and conversation about him should not take place. We are trying to get visitation established for you and [your wife], and it's not about [Schoonover]. Also, no negative comments about anyone in our family. We don't talk about you guys and expect the same. And we just ask to know where [L.S.] will be.**

Ex. 7. Schoonover asserts that these indicate that Kayla was interfering with Schoonover's contact with L.S.

**{¶35}** However, on cross-examination, Robert testified that this statement meant that he was not to initiate contact with Schoonover while he (Robert) was visiting with L.S. May 6 Tr. 93. Robert also affirmed that Kayla's intention was "not to make it easy on [Schoonover]" because he "had to step up to the plate and do his own part as a dad * * *." *Id.* Thus, the evidence at the hearing indicates that these texts appear to be directed at Robert's conduct during his visits with L.S. and not a restriction on Schoonover's ability to contact L.S. of his own volition.

**{¶36}** Fifth, Schoonover points to the fact that he was incarcerated in April of 2018 and was in rehabilitation in New York in between May of 2018 and August of 2018. He argues that he could not have visited L.S. during these timeframes even with the temporary order in place. However, this argument belies the fact that Schoonover was not required to visit L.S. physically in order to have more than de minimis contact with his son. *See Matter of Adoption of Hupp*, 9 Ohio App.3d 128, 130, 458 N.E.2d 878, 882 (8th Dist. 1982) (holding that "[p]hysical visitation is not

necessary to preserve a parent's interest and a parent's right to retain parental status.").

{¶37} "Ohio courts have consistently held that incarceration alone is not a justifiable reason for failing to communicate with one's child." *In re Adoption of T.M.*, 6th Dist. Sandusky No. S-09-010, 2009-Ohio-5194, ¶ 17. However, Schoonover admitted that he did not attempt to contact L.S. while he was incarcerated. January 4 Tr. 4. *See In re Adoption of R.M.Z.*, 2d Dist. Montgomery No. 23511, 2009-Ohio-5627, ¶ 21 (holding that "[i]ncarceration of a parent, absent additional circumstances, does not justify failure to communicate with a child, because it does not preclude letter-writing and phone calls.").

{¶38} Similarly, Schoonover testified that, while he was in rehabilitation, he did not call, text, or communicate with L.S. even though his rehabilitation program did not limit these kinds of contact. January 4 Tr. 38, 40. He also stated that he did not send letters, gifts, or packages to L.S. during this time. *Id*. at 38. Even after Schoonover returned from rehabilitation, he admitted that he did not visit with L.S. at Harmony House; did not call, text, or communicate with L.S.; and did not send letters, packages or gifts to L.S. *Id*. at 37-38, 40. Further, there is no evidence in the record that indicates that Kayla or Bradley interfered with Schoonover's ability to visit L.S. in between August of 2018, when Schoonover returned from rehabilitation, and October of 2018, when Bradley filed his petition for adoption.

{¶39} After considering the evidence in the record, we do not find any indication in the record that the trial court's judgment is against the manifest weight of the evidence. The determination of the trial court on this matter is based upon some competent, credible evidence. Given the specific facts of this case, we cannot conclude that the trial court erred in determining that Schoonover's consent was not necessary for this adoption to proceed. For this reason, Schoonover's second assignment of error is overruled.

*Conclusion*

{¶40} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Probate Division of the Hancock County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW, P.J., and PRESTON, J., concur.**

**/hls**