## In re ADOPTION OF YOUNGPETER.

[Cite as *In re Adoption of Youngpeter* (1989), 65 Ohio App.3d 172.]

Court of Appeals of Ohio,
Hancock County.

No. 5-88-44.

Decided Oct. 27, 1989.

*Whitman Law Office* and *Kelton K. Smith,* for appellant Bradley Lynn Coats.

*Elizabeth Candler,* for appellee Daniel Albert Youngpeter.

MILLER, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Hancock County, Probate Division, granting the appellee's petition for the adoption of Shannon Amber Youngpeter over the objection of appellant Bradley Lynn Coats, the child's putative father.

On July 31, 1983, Shannon was born out of wedlock to Cindy Darlene Youngpeter. On the birth certificate Bradley Coats was named as the child's father. In September 1984, Cindy moved out of the home of Bradley Coats. On June 22, 1985, Cindy married the appellee, Daniel Albert Youngpeter.

On September 25, 1985, appellee filed a petition seeking to adopt Shannon.

In the initial hearing before the Probate Division of the Court of Common Pleas of Hancock County, the trial court found that it would be in the best interest of the child for the adoption to be granted. Further, the trial court found that Bradley Lynn Coats' consent to the adoption was required as his payment of a medical bill, attributable to the birth of the minor child during the one-year period of time preceding the filing of the adoption petition, constituted support pursuant to R.C. 3107.07(A). As a result the court ordered the petition for adoption dismissed as Bradley Lynn Coats' consent was necessary.

On or about May 19, 1987, Daniel Youngpeter appealed the trial court's decision to the Court of Appeals of Hancock County. On June 24, 1988, the court of appeals reversed the decision of the trial court on the grounds that the trial court proceeded to hear the matter under R.C. 3107.07(A). The court of appeals found that Bradley Lynn Coats was never married to the child's mother, and he was never adjudicated to be the child's father and, thus, the matter should have proceeded under R.C. 3107.07(B).

In his amended petition filed by August 18, 1988, Daniel Youngpeter alleged that the consent of Bradley Lynn Coats was not necessary for the adoption of Shannon because he "willfully abandoned or failed to care for and support the minor child."

The trial court in its November 21, 1988 judgment entry found:

"1. It would be in the best interest of the child that the adoption be granted.

"2. It is not necessary for the natural father to file a written objection to the adoption if he appears personally at the final hearing and orally indicates that he is contesting the adoption.

"3. The allegation in the petition that the natural father has willfully abandoned or failed to care for the support the minor child is sustained by the evidence.

"4. Payment of a medical bill incurred for the birth of the child three years after said birth and the purchase of a few miscellaneous clothing items does not constitute sufficient support as used in ORC 3107.07(B).

"As a result of the above finding this Court finds that the natural father's consent to the adoption is not necessary and therefore orders, adjudges and decrees that petitioner's amended petition for adoption should and the same is hereby granted."

Appellant sets forth three assignments of error.

Assignment of error number one:

"The trial court committed prejudicial error when it found as a matter of law that a payment made by a putative father, paid during a one-year period preceding the filing of a petition for adoption, for the birth of his minor child which had occurred three (3) years prior to such payment, with few other payments made by the putative father for the care and support of the minor child during said time period, was insufficient so as to comply with and constitute care for and support of the minor under Ohio Revised Code Section 3107.07(B), and held that as a matter of law the putative father's consent to such adoption need not be secured to allow such adoption to occur."

R.C. 3107.07(B) provides:

"Consent to adoption is not required of any of the following:

" * * *

"(B) The putative father of a minor if the putative father * * * files an objection with the court * * * and the court finds, after proper service of notice and hearing, * * * that he has willfully abandoned or failed to care for and support the minor, or abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or its placement in the home of the petitioner, whichever occurs first[.]"

In *In re Adoption of Strawser* (1987), 36 Ohio App.3d 232, 235, 522 N.E.2d 1105, 1108, the court, upon applying the standard set forth in R.C. 3107.07(B), stated:

"There is a common-law duty for a putative father to support his child born out of wedlock. *Johnson v. Norman* (1981), 66 Ohio St.2d 186, 20 O.O.3d 196, 421 N.E.2d 124. A willful failure to fulfill that common-law duty for a substantial period of time prior to the filing of an adoption petition can result in the determination that the putative father's consent to the adoption is not required. * * * "

The issue before this court is whether the putative father's payment of the medical expenses, attributable to the minor child's birth, constituted "support" pursuant to R.C. 3107.07(B).

In *Kulcsar v. Petrovic* (1984), 20 Ohio App.3d 104, 105, 20 OBR 126, 127, 484 N.E.2d 1365, 1366, the court stated:

"The father's duty of support of his minor children extends only to 'necessaries.' 59 American Jurisprudence 2d (1971) 144, Parent and Child, Section 55. The term 'necessaries' is generally defined as:

" ' * * * a place of abode, furniture, articles of food and wearing apparel, medicines, medical attention, nursing, means of education, and social protection and opportunity, as comport with the health, comfort, welfare, and normal living of human beings according to present standards of civilization,

considering his own means, earning capacity, and station in life.' (Footnote omitted.) 41 Ohio Jurisprudence 2d (1960) 341, Parent and Child, Section 30."

 We note that in parentage actions the obligation of a putative father to support his minor child, including the payment of medical expenses attributable to the pregnancy of the mother, may be enforced pursuant to R.C. 3111.13. In particular, R.C. 3111.13(C) provides:

"The judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, * * * or any other matter in the best interest of the child. The judgment or order shall direct the father to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement. * * * "

We conclude that the expenses attributable to the birth of a child are "necessaries." As a result, a father's duty of support of a minor child includes the obligation to pay the pregnancy and confinement expenses of the mother attributable to the birth of the child.

We further conclude that the putative father in this case did provide support to his minor child when he paid the outstanding medical bills attributable to his child's birth within one year of the filing of the petition for adoption.

Therefore, the trial court erred by finding that the putative father failed to provide support to his minor child, prior to the filing of the adoption petition, and that his consent was not necessary for the granting of the adoption petition.

Appellant's first assignment of error is well taken.

We consider the last two assignments of error pursuant to the mandate of App.R. 12(A).

Assignment of error number two:

"The trial court committed prejudicial error when it held that appellant willfully failed to care for and support his minor child as his failure to extensively care for and support said child, as such, was caused by the child's custodian's transportation of the child from the city of Findlay, Ohio, without notifying appellant of the child's whereabouts."

In *In re Adoption of Hupp* (1982), 9 Ohio App.3d 128, 9 OBR 192, 458 N.E.2d 878, the court, in paragraphs two and three of the syllabus, stated:

"2. Failure by a parent to communicate with his or her child is sufficient to authorize adoption without that parent's consent, only if it is a complete failure to communicate, in the nature of a complete abandonment of current interest in that child.

"3. Significant interference by a custodial parent with communication between the non-custodial parent and their child, or significant discouragement by the custodial parent of such communication, constitutes justifiable cause for the non-custodial parent's failure to communicate with that child, if it demonstrates that the failure to communicate was not voluntary and intentional."

A review of the record indicates that after the mother and child moved out of the appellant's home, the appellant maintained contact with the child, while the child was living in Findlay, Ohio.

In 1985, Daniel and Cindy Youngpeter moved to Delphos, Ohio, with the minor child. The record reveals that Cindy did not personally or by letter inform the appellant of the child's address or telephone number. Cindy did testify that she told the appellant's brother and her sister where she and the child were living. However, Cindy did not instruct anyone to inform the appellant of her and the child's whereabouts.

In September 1986, the appellant did call in order to talk to and see the child. However, Cindy Youngpeter testified:

"A. I answered the phone and Brad said I'd like to come see Shannon. I said, well, it's been two years, and I laughed. I said, I don't want to talk to you anymore, and I hung up. I'd like to come get Shannon, he said.

"Q. Not see Shannon, but get Shannon?

"A. Uh-huh. I laughed. I just laughed.

"Q. What did get Shannon mean to you?

"A. To me it means he wanted to come and see her like he always did, and take her to see his family."

In *In re Adoption of Hupp, supra,* 9 Ohio App.3d at 131, 9 OBR at 196, 458 N.E.2d at 883, the court, citing *In re Lindley* (Mar. 20, 1980), Cuyahoga App. No. 40333, unreported, stated:

" 'Where a custodial parent has, through her own substantial efforts, deprived the non-custodial parent of the opportunity of enjoying a meaningful relationship with his child and further has actively interfered with his attempts, however meager, to provide support and maintenance to the child, the law should not further reward her discordant efforts by countenancing a termination of the non-custodian's parental rights in a non-consensual adoption proceeding.' * * * "

In this case, the child's mother acknowledged that she refused on one occasion to permit visitation by the child's father and that she failed to provide the father with information as to the child's address and phone number.

■ We conclude that the evidence in this cause does not support the trial court's finding that the appellant father completely failed to communicate with his child without justifiable cause.

■ Assignment of error number two is well taken.

Assignment of error number three:

"The trial court committed prejudicial error when it overruled appellant's motion to dismiss appellee's petition for failure to prove that appellant willfully [*sic*] failed to care for his minor child, in that appellee failed to prove that appellant had sufficient income to support the child."

Civ.R. 41(B)(2) provides:

"Dismissal; Non-jury Action. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 if requested to do so by any party."

The test in determining a motion for dismissal at the close of plaintiff's case as here is that of weighing the evidence to determine whether upon the facts and law the plaintiff has shown no right to relief.

There was evidence in the record that appellant was employed during at least a part of the time in question.

The court said in *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 104, 515 N.E.2d 919, 922:

" * * * [W]e reemphasize that pursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause.

" * * *

"Appellant's concern with the placement of the burden of proof in *Masa* [*In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140] indicates to us that there may be some misunderstanding of the law of that case among the Ohio bench and bar. As we explained in *Masa:*

" 'Lest one may think we are placing an unfair burden on the adopting parent, *it should be pointed out that the adopting parent has no legal duty to prove a negative. If the natural parent does not appear to go forward*

*with any evidence of justification, obviously the adopting parent has only the obligation of proving failure of support by the requisite standard.'* (Emphasis added.) *Id.* at 167, 23 OBR at 333, 492 N.E.2d at 143.

"Therefore, a natural parent may not simply remain mute while the petitioner is forced to demonstrate why the parent's failure to provide support is unjustifiable. Rather, once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the *burden of going forward with the evidence* is on the natural parent to show some facially justifiable cause for such failure. The *burden of proof,* however, remains with the petitioner." (Emphasis *sic* and footnote omitted.)

We conclude that the trial court did not err in overruling appellant's motion to dismiss at the close of appellee's case for failure of proof that appellant had sufficient income to support the child.

Assignment of error number three is not well taken.

For the reasons set forth in assignments of errors numbers one and two, we reverse the trial court's judgment.

*Judgment reversed.*

SHAW and THOMAS F. BRYANT, JJ., concur.