OPINION
{¶ 1} Respondent-Appellant, Nina Smith ("Appellant"), appeals a decision by the Wyandot County Common Pleas Court, Probate Division, allowing the adoption of two of her daughters by Petitioner-Appellee, Connie Cooper ("Cooper"), to proceed without parental consent pursuant to R.C. 3107.07(A). Appellant argues that the trial court erred as a matter of law and abused its discretion in finding that she failed, without justification, to communicate with the children in the year preceding the petition. Because the record demonstrates that Appellant failed to communicate with the children in the year preceding the petition without justification, we affirm the judgment of the trial court.
 {¶ 2} Per a May 22, 1996 order of the Wyandot County Common Pleas Court, Juvenile Division, two of Appellant's daughters were placed in the temporary custody of their paternal grandmother, Connie Cooper. Visitation was ordered at the residence of Keith Smith, Sr. ("Smith"), Appellant's former husband, and prior court approval was required for alternative visitation arrangements. A July 17, 1996 order stated, in relevant part, that "[i]t is further ordered that minimum support shall be imputed to Nina Smith, upon her release from the Wyandot County Jail and that Nina Smith is Ordered to contact the Child Support Enforcement Agency with her financial verification for computing child support."
 {¶ 3} On August 19, 2002, Cooper petitioned for adoption of the children, alleging that Appellant's consent was not required pursuant to R.C. 3107.07(A) because she had failed to communicate with or provide any support for the children in the year preceding the petition. The matter came on for hearing on October 29, 2002.
 {¶ 4} Evidence submitted at the hearing shows that in April or May of 2001, Smith refused to permit visitations in his home. Appellant then made arrangements with Cooper to visit the children away from Smith's residence. Appellant last visited the children at Cooper's home on or about June 9, 2001. Appellant testified that on July 1, 2001, Cooper refused to allow Smith to pick up the children on Appellant's behalf for visitation and told Appellant that no further visitations would occur at her residence. Cooper, however, testified that visitation did not occur that day because Appellant had failed to show for several visitations and Cooper had other commitments. Cooper denied that she made any statement refusing future visitations.
 {¶ 5} Appellant further claimed to have sent the children Easter baskets, birthday presents, and Christmas cards, and made attempts to phone the girls in the months preceding the petition. Smith confirmed that he had made some deliveries on Appellant's behalf but was uncertain as to whether the deliveries occurred within or prior to the year preceding the petition. Cooper testified that the deliveries occurred more than twelve months before the petition and that the girls received no phone calls or cards from Appellant. Cooper supported her testimony with a journal she maintained regarding events relating to visitation, communication, and care of the children. As to Appellant's support obligation, a CSEA representative testified that they believed support was not required because Appellant was dependent upon supplemental security income ("SSI").
 {¶ 6} Citing the vague terminology of the support order and fact that the CSEA believed that support was not required, the trial court found Appellant's lack of support to be justifiable. However, as to communication, the court found Appellant's testimony lacked credibility. The court indicated that the evidence demonstrated that Appellant had failed to communicate with the children in the year preceding the petition without justification, concluding that her consent was not required for the adoption. The matter was ordered to proceed on the petition as filed.
 {¶ 7} Appellant appeals this determination, presenting five assignments of error for review. Appellee has cross-appealed, presenting two assignments of error for consideration. In interest of brevity, clarity, and logical progression, we have consolidated and will initially address Appellant's second and third assignments of error, which concern whether Appellant communicated with the children in the year preceding the petition and the court's corresponding credibility determination. For similar reasons, we have consolidated Appellant's first, fourth, and fifth assignments of error for purposes of review, which concern whether justification exists for any lack of communication.
Assignment of Error Number Two
The Trial Court erred as a matter of law in its conclusion that the Appellant failed to communicate with her children for a period of one year before the adoption petition was filed.
Assignment of Error Number Three
The Trial Court erred in finding that Appellant was not credible through the testimony from witnesses from the CSEA.
 {¶ 8} Within her first and second assignments of error, Appellant challenges the trial court's credibility assessment and contends that Cooper failed to prove by clear and convincing evidence that she failed to communicate with the children in the year preceding the petition.
 {¶ 9} R.C. 3107.07(A) provides as follows:
Consent to adoption is not required of any of the following:
 (A) A parent of a minor, when it is alleged in the adoption petitionand the court finds after proper service of notice and hearing, that theparent has failed without justifiable cause to communicate with the minoror to provide for the maintenance and support of the minor as required bylaw or judicial decree for a period of at least one year immediatelypreceding either the filing of the adoption petition or the placement ofthe minor in the home of the petitioner.
 {¶ 10} Pursuant to R.C. 3107.07(A), adoption petitioners have the burden of establishing by clear and convincing evidence both: (1) that the natural parents have failed to support or communicate with the child for the requisite one-year period, and; (2) that this failure was without justifiable cause.[1] The question of whether the natural parent's failure to support or communicate with a child for the statutory time has been without justifiable cause is a determination generally reserved to the trial court because it is in the best position to observe the demeanor of the parties, to access their credibility, and to determine the accuracy of their testimony.[2] Such a determination will not be disturbed on appeal unless it is against the manifest weight of the evidence.[3] A judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence.[4]
 {¶ 11} As the Ohio Supreme Court observed in Seasons Coal Co. v.Cleveland,[5] "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Such deference is particularly important in light of research that indicates that as much as "ninety percent of the total meaning of testimony is interpreted through non-verbal behavior, such as voice inflection, hand gestures, and the overall visual demeanor of the witness. The witness' choice of words accounts for only ten percent of the meaning of their testimony."[6]
 {¶ 12} As outlined above, Cooper and Appellant presented conflicting evidence as to Appellant's contact with the children in the year preceding the petition. Assessing the credibility of the evidence presented, the trial court found the contemporaneously recorded events in Cooper's journal and her testimony to be the most credible version of events preceding the petition. The court noted that the journal logs both favorable and unfavorable events, and found that Cooper's recollection of events was clear and consistent.
 {¶ 13} In contrast, the court found that Appellant and Smith's testimony was contradictory as to the date, time, or year gifts were delivered. The court found their demeanor to be most telling, indicating that they were quick to offer general statements confirming Appellant's purported contacts but became hesitant and appeared evasive when questioned as to the precise details of the type and timing of specific contacts. Appellant conceded that she had no personal knowledge of whether the alleged gifts were actually delivered, had no record of any purported attempts to phone the children, and never left any messages on the answering machine. The trial court additionally noted that Appellant's testimony conflicted with that of a CSEA representative as to her interaction with the agency. While the support order was entered in 1996, the CSEA support calculation was not completed until 1998. Although Appellant claimed to have provided and updated contact and income information, a CSEA representative testified that the calculation delay was caused by difficulty locating Appellant.
 {¶ 14} This court will not substitute its judgment for that of the trier of facts on issues of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.[7] In this regard, the trial court was free to accept Cooper's version of events and, so long as it is supported by sufficient evidence, conclude that Appellant had not communicated with the children in the year preceding the adoption petition.[8] Affording appropriate deference to the trial court's credibility assessment, we find sufficient competent, credible evidence supporting the finding that Appellant had failed to communicate with the children in the year preceding the adoption petition.
 {¶ 15} Appellant alternatively argues that, even if Cooper can refute the actual receipt of any calls, cards or gifts, she cannot testify that Appellant did not in fact attempt such communication. Appellant asserts that the trial court abused its discretion in failing to find that the purportedly uncontested testimony that she made these attempts constituted communications or otherwise excused her lack of actual communication. However, the trial court was free to find these "unrefuted" claims lacked credibility.[9] Moreover, a message, gift, or other attempt to communicate that is not interfered with and not received does not constitute a communication for purposes R.C. 3107.07.[10]
Accordingly, we do not find the trial court's determination to be arbitrary or unreasonable. Consequently, Appellant's second and third assignments of error are overruled.
Assignment of Error Number One
The Trial Court erred as a matter of law in failing to find that substantial interference existed to create a justifiable lack of contact by Appellant.
Assignment of Error Number Four
The Trial Court erred in its factual finding that Appellant failed to take steps to enforce her rights to have contact with Ashley and Lacey.
Assignment of Error Number Five
The Trial Court abused its discretion in finding that Appellant's justification for her failure to contact the minor children was not credible.
 {¶ 16} In her first, fourth, and fifth assignments of error, Appellant claims that the evidence demonstrated that both Smith and Cooper substantially interfered with her visitation rights and other communication efforts. Consequently, Appellant contends that the trial court erred in failing to find that her lack of communication with the children was justifiable.
 {¶ 17} Once a petitioner has established that the natural parents have failed to support or communicate with the child for the requisite time, the natural parents must come forward with some evidence supporting a facially justifiable cause for such failure; however, the ultimate burden of proof remains with the petitioner.[11]
 Where a custodial parent has, through her own substantial efforts,deprived the non-custodial parent of the opportunity of enjoying ameaningful relationship with his child and further has activelyinterfered with his attempts, however meager, to provide support andmaintenance to the child, the law should not further reward herdiscordant efforts by countenancing a termination of the non-custodian'sparental rights in a non-consensual adoption proceeding.[12]
 {¶ 18} Again, the question of whether a natural parent's failure to support or communicate with a child was justifiable is a determination generally reserved to the trial court and will not be disturbed on appeal if supported by some competent, credible evidence.[13]
 {¶ 19} In 1998, visitation was ordered to occur at Smith's residence and prior court approval was required for alternative visitation arrangements. At trial, Appellant claimed that Smith's refusal to permit visitation at his residence after April of 2001 demonstrated significant interference by the party obliged to provide the sole visitation forum. She asserted that but for Smith's denial, the adoption action would not have occurred. Noting that it was clear that none of the parties had complied with the order and that alternative visitation locations had been utilized, the trial court found that Smith's refusal did not justify her lack of communication.
 {¶ 20} Appellant argues that the trial court ignored the role and implications of Smith's refusal to permit visitation at his residence. We disagree. As reflected in Appellant's own testimony, Smith's denial did little more than eliminate one location in which the parties permitted visitation to occur. When asked as to how visitations were conducted after the order was entered in 1998, Appellant stated:
I picked the girls up at their grandmother's, Connie Cooper's home andI took them to [Smith]'s home and visited with them, unless I askedConnie if I could take them somewhere else and she gave me permission todo that.
 {¶ 21} Furthermore, Appellant and Cooper testified that even after Smith's refusal, Appellant continued to visit the children at Cooper's home and that Smith appeared at Cooper's house to retrieve the children for a subsequent visitation. Appellant cannot now employ the parties' collective deviation from the order to justify her subsequent lack of communication.
 {¶ 22} Appellant cites our decision in In re Adoption ofYoungpeter,[14] as support for the proposition that Cooper's visitation refusal on July 1, 2001, is independently sufficient interference to justify her lack of communication. Although this failed visitation occurred more than a year before the petition, in examining whether the parent's failure was justified, the court is not restricted to events occurring during the statutory one-year period and must also examine preceding events having any bearing on the parent's failure to communicate.[15] In Youngpeter, the mother acknowledged that she refused visitation on one occasion, telling the father that she did not want to talk with him again and, thereafter, failed to provide the father the child's address or phone number.[16] We found that the mother's active interference and substantial efforts to deprive the father of the opportunity for a meaningful relationship with the child provided justifiable cause for his lack of communication.[17]
 {¶ 23} In contrast, Cooper explained that she only refused visitation that day because she had made other commitments after Appellant missed preceding visitations without explanation. As discussed above, Appellant's claims that Cooper had forever barred all future visitations were found to be incredulous. Furthermore, Cooper resided at the same address and maintained the same phone number throughout the duration of the proceedings. The trial court noted Cooper's efforts to accommodate alternative visitation and found clear and convincing evidence that no justifiable cause existed as to Appellant's failure to communicate with her children. The record contains competent credible evidence supporting these determinations. These circumstances do not show that Cooper made substantial efforts to deprive Appellant of the opportunity for contact with the children. Therefore, the trial court did not err finding that Cooper's conduct did not excuse Appellant's failure to communicate with the children for more than a year.
 {¶ 24} Last, Appellant claims that she made efforts to enforce her visitation rights through the court system but was encountering financial difficulties while attempting to commence the action. Citing the fact that she elected to pursue rights with other children whom she had not seen in three or four months as opposed to her daughters, whom she had not attempted to communicate with in more than a year, the trial court found her claims to lack sufficient funds to commence the action and to have made ongoing attempts to communicate with the children to be not credible. The court concluded that Appellant simply felt that she could put her daughters on hold until other matters she deemed to be of higher priority were settled. Upon review of the record, we cannot say that this determination is arbitrary, unreasonable, or unsupported by the record. Accordingly, Appellant's first, fourth, and fifth assignments of error are overruled. Therefore, Cooper's assignments of error, which relate to the court's finding that Appellant's lack of support was justifiable, are rendered moot.[18]
 {¶ 25} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the Wyandot County Common Pleas Court, Probate Division, is hereby affirmed.
Judgment affirmed.
SHAW and CUPP, JJ., concur.
[1] In re Adoption of Bovett (1987), 33 Ohio St.3d 102, paragraph one of the syllabus; In re Fetzer (1997), 118 Ohio App.3d 156, 164.
[2] In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 367.
[3] In re Adoption of Bovett, 33 Ohio St.3d at paragraph four of the syllabus; In re Masa (1986), 23 Ohio St.3d 163, paragraph two of the syllabus; In re Adoption of Lay (1986), 25 Ohio St.3d 41, 42; In reFetzer, 118 Ohio App.3d at 165.
[4] Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
[5] Id.
[6] State v. Evans (1993), 67 Ohio St.3d 405, 410-411.
[7] See, In re Estate of Worstell v. Harold Todd, Inc. ex rel Estate ofWorstell (Oct. 4, 2002), Montgomery App. No. 19133, 2002-Ohio-5385, ¶ 60; State v. Sinica (Mar. 29, 1989), Allen App. No. 1-86-47 (history omitted).
[8] In re Adoption of Doe (Dec. 30, 1993), Huron App. No. H-93-12.
[9] See, e.g., Stevenson v. Stevenson (May 30, 2000), Allen App. No. 1-99-98, 2000-Ohio-1851.
[10] In re Adoption of Hedrick (1996), 110 Ohio App.3d 622, 626-627, citing In re Adoption of Bradford (1985), 18 Ohio St.3d 361,369-370.
[11] In re Adoption of Bovett, 33 Ohio St.3d at paragraph two of the syllabus; In re Fetzer, 118 Ohio App.3d at 164-165.
[12] In re Adoption of Youngpeter (1988), 65 Ohio App.3d 172, 177
(citations omitted).
[13] See, e.g., In re Adoption of Holcomb, 18 Ohio St.3d at 367; In reAdoption of Bovett, 33 Ohio St.3d at paragraph four of the syllabus.
[14] Youngpeter, 65 Ohio App.3d 172.
[15] In re Adoption of Hedrick (1996) 110 Ohio App.3d 622, 627; Inre Adoption of Lauck (1992), 82 Ohio App.3d 348, 353.
[16] Yougpeter, 65 Ohio App.3d at 177-178.
[17] Id.
[18] See App.R. 12(1)(c).