[Cite as *In re Adoption of C.N.A.*, 2018-Ohio-897.]

**IN THE COURT OF APPEALS OF OHIO**
**THIRD APPELLATE DISTRICT**
**SHELBY COUNTY**

IN RE:  THE ADOPTION OF:

        C.N.A.

[BRENT L. ANDERSON - APPELLANT]

CASE NO.  17-17-20

O P I N I O N

**Appeal from Shelby County Common Pleas Court**
**Probate Division**
**Trial Court No. 2017 ADP 00005**

**Judgment Affirmed**

**Date of Decision:  March 12, 2018**

**APPEARANCES:**

    *Jay M. Lopez* **for Appellant**

    *Jeremy M. Tomb* **for Appellee**

**PRESTON, J.**

{¶1} Petitioner-appellant, Brent L. Anderson ("Brent"), appeals the September 18, 2017 decision of the Shelby County Court of Common Pleas, Probate Division, concluding that the consent of respondent-appellee, Nathaniel T. Parker ("Nathaniel"), to Brent's petition to adopt C.N.A. is necessary. For the reasons that follow, we affirm.

{¶2} C.N.A. was born in March 2011 to Nathaniel and Amanda Sue Brooks Anderson ("Amanda"). (Doc. No. 1). After Amanda and Brent were married in 2015, Brent filed a petition to adopt C.N.A. on February 21, 2017. (*Id.*). In his petition, Brent asserted that Nathaniel's consent to the adoption is not necessary because: (1) Nathaniel "failed without justifiable cause to provide more than de minimis contact with the minor for a period of at least one year immediately preceding the filing of the adoption petition"; and (2) Nathaniel "failed without justifiable cause to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the adoption petition." (*Id.*). Also on February 21, 2017, Amanda filed her consent to Brent's adoption of C.N.A. (Doc. No. 3). Brent filed an amended petition to adopt C.N.A. on March 13, 2017. (Doc. No. 5).

{¶3} On April 10, 2017, Nathaniel filed a motion "to stay this matter pending a determination from the Juvenile Court regarding [his] Motion to Establish Parental

Rights and Responsibilities, Motion for Interim Parenting Time, and Motion for Shared Parenting, or in the alternative, Parenting Time. (Doc. No. 9). Brent filed his memorandum in opposition to Nathaniel's motion to stay the adoption proceeding on April 28, 2017. (Doc. No. 13). After a hearing on May 22, 2017, the trial court the next day denied Nathaniel's motion to stay the adoption proceeding. (Doc. No. 20).

{¶4} After hearings on July 27 and August 3, 2017, the trial court filed on September 17, 2017 its judgment entry that is the subject of this appeal. (Doc. No. 32). In it, the trial court concluded that Nathaniel's consent is required because Brent failed to prove that Nathaniel "failed without justifiable cause to provide more than de minimis contact with the child" and "failed to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either [sic] the filing of the adopting petition." (*Id.*).

{¶5} Brent filed a notice of appeal on October 2, 2017. (Doc. No. 33). He raises one assignment of error for our review.

**Assignment of Error**

**The Trial Court erred and acted contrary to law when it determined that Appellee, Nathaniel Parker's, consent was necessary for the step-parent adoption.**

{¶6} In his assignment of error, Brent argues that the trial court erred by concluding that Nathaniel's consent to Brent's adoption of C.N.A. is necessary. In particular, Brent argues that the trial court erred by concluding that he failed to prove that Nathaniel failed without justifiable cause to provide more than de minimis contact with C.N.A. Brent also argues that the trial court erred by concluding that he failed to prove that Nathaniel failed to provide for the maintenance and support of C.N.A. as required by law or judicial decree during the year immediately preceding the date on which Brent filed his petition to adopt C.N.A.

{¶7} "'Ordinarily, the written consent of a minor child's natural parents is required prior to adoption, but R.C. 3107.07 provides exceptions to this requirement.'" *In re Adoption of H.R.*, 3d Dist. Logan No. 8-14-15, 2014-Ohio-5390, ¶ 23, quoting *In re Adoption of K.C.*, 3d Dist. Logan No. 8-14-03, 2014-Ohio-3985, ¶ 20. Specifically, R.C. 3107.07 states:

Consent to adoption is not required of any of the following:

(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately

preceding either the filing of the adoption petition or the placement of

the minor in the home of the petitioner.

R.C. 3107.07(A). "'R.C. 3107.07(A) is written in the disjunctive.'" *In re Adoption of H.R.* at ¶ 23, quoting *In re Adoption of K.C.* at ¶ 21. "'Therefore, a failure without justifiable cause to provide *either* more than de minimis contact with the minor *or* maintenance and support for the one-year time period is sufficient to obviate the need for a parent's consent.'" (Emphasis sic.) *Id.*, quoting *In re Adoption of K.C.* at ¶ 21, citing *In re Adoption of A.H.*, 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9.

{¶8} "Because cases such as this one may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to provide more than de minimis contact with the minor or failed to provide for the maintenance and support of the minor during the requisite one-year period and that there was no justifiable cause for the failure." *Id.* at ¶ 24, citing *In re Adoption of K.C.* at ¶ 24, citing *In re R.L.H.*, 2d Dist. Montgomery No. 25734, 2013-Ohio-3462, ¶ 9. "'"Once the petitioner has established this failure, the burden of going forward shifts to the parent to show some facially justifiable cause for the failure. * * * The burden of proof, however, remains with the petitioner."'" *Id.*, quoting *In re R.L.H.* at ¶ 9, quoting *In re A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 10.

> Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus, and citing *In re Adoption of K.C.* at ¶ 24.

**{¶9}** "'The Supreme Court of Ohio has articulated a two-step analysis for probate courts to employ when applying R.C. 3107.07(A).'" *Id.* at ¶ 25, quoting *In re Adoption of K.C.* at ¶ 23, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, ¶ 23. "The first step involves deciding a factual question—in this case, whether the parent failed to provide more than de minimis contact with the minor or failed to provide for the maintenance and support of the minor for a period of at least one year immediately preceding the filing of the adoption petition." *Id.*, citing *In re Adoption of K.C.* at ¶ 23, citing *In re R.L.H.* at ¶ 12, citing *In re Adoption of M.B.* at ¶ 23. *See also In re Adoption of S.J.M.H.*, 1st Dist. Hamilton No. C-130683, 2014-Ohio-3565, ¶ 29. ""A trial court has discretion to make these determinations, and in connection with the first step of the analysis, an appellate court applies an abuse-of-discretion standard when reviewing a probate court decision * * *."" *Id.*,

quoting *In re Adoption of K.C.* at ¶ 23, quoting *In re Adoption of M.B.* at ¶ 25. *See also In re Adoption of S.J.M.H.* at ¶ 29. "In the second step of the analysis, if a probate court finds the parent failed to provide more than de minimis contact or failed to provide for the maintenance and support of the minor, the court then determines 'whether justifiable cause for the failure has been proved by clear and convincing evidence.'" *Id.*, quoting *In re Adoption of M.B.* at ¶ 23. *See also In re Adoption of K.C.* at ¶ 23. "'A probate court's decision on whether justifiable cause exists will not be disturbed on appeal unless the determination is against the manifest weight of the evidence.'" *Id.*, quoting *In re Adoption of K.C.* at ¶ 23, citing *In re Adoption of M.B.* at ¶ 24 and *In re Adoption of Masa*, 23 Ohio St.3d 163 (1986), paragraph two of the syllabus.

> In determining whether a judgment is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that there must be a reversal of the judgment and an order for a new trial.

*In re Adoption of N.T.R.*, 10th Dist. Franklin No. 16AP-589, 2017-Ohio-265, ¶ 11, citing *In re Adoption of E.E.R.K.*, 2d Dist. Miami No. 2013 CA 35, 2014-Ohio-1276, ¶ 18.

**{¶10}** As an initial matter, we must address Brent's failure to comply with the Ohio Rules of Appellate Procedure by omitting any argument illustrating the reasons in support of his challenge to the trial court's decision. "[A]n appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2): 'if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *Rodriguez v. Rodriguez*, 8th Dist. Cuyahoga No. 91412, 2009-Ohio-3456, ¶ 4, quoting App.R. 12(A); *Hawley v. Ritley*, 35 Ohio St.3d 157, 159 (1988). App.R. 16(A)(7) requires that Brent include in his brief: "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." "'It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error.'" *Rodriguez* at ¶ 7, quoting *State v. McGuire*, 12th Dist. Preble No. CA95-01-001, 1996 WL 174609, *14 (Apr. 15, 1996). "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *Id.*,

citing *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998) and *McGuire* at *14.

{¶11} Brent failed to make any argument as to how the trial court specifically erred in concluding that he failed to prove that Nathaniel failed without justifiable cause to provide more than de minimis contact with C.N.A. and that Nathaniel failed to provide for the maintenance and support of C.N.A. Rather, Brent appears to imply that this court should conduct a de novo review of his statement of facts and decide the case in his favor. That does not comport with Ohio's system of appellate review.

{¶12} Applying the appropriate standard of review, we begin by addressing whether the trial court abused its discretion by finding that Brent failed to prove that Nathaniel failed to provide more than de minimis contact with C.N.A. In making that finding, the trial court stated, "The record is replete with instances of [Nathaniel] communicating or attempting to communicate with the child over the last year or more, including making direct contact by attending the child's sporting events." (Doc. No. 32).

{¶13} As this court has previously discussed, "'[t]he Legislature amended the statute to require a finding that the parent failed to "provide more than de minimis contact" with the minor child for a period of one year.'" *In re Adoption of H.R.*, 2014-Ohio-5390, at ¶ 32, quoting *In re Adoption of K.C.*, 2014-Ohio-3985, at

¶ 22. "'The prior version of the statute required a finding that the parent failed to "communicate" with the minor child for a period of one year.'" *Id.*, quoting *In re Adoption of K.C.* at ¶ 22. "'"By changing the standard from 'communicate,' which could imply a single contact, to 'more than de minimis contact,' which seems to imply more than a single contact, the Legislature indicated its intent to require more effort from the parent to have contact and communication with the child."'" *Id.*, quoting *In re Adoption of K.C.* at ¶ 22, quoting *In re J.D.T.*, 7th Dist. Harrison No. 11 HA 10, 2012-Ohio-4537, ¶ 9.

{¶14} Based on our review of the record, the trial court did not abuse its discretion in concluding that Brent failed to prove that Nathaniel failed to have more than de minimis contact with C.N.A. Nathaniel testified that he attended C.N.A.'s wrestling meet in January 2017. (July 27, 2017 Tr. at 17-18). Nathaniel "talked to [C.N.A.] throughout the entire meet in between matches" when C.N.A. would "come up, sit with [Nathaniel] in the stands and then after the meet, [Nathaniel] talked to him for about forty minutes." (*Id.* at 18). Nathaniel also testified that he had four phone conversations with C.N.A. between February 21, 2016 and February 21, 2017. (*Id.* at 19). In addition, Nathaniel Skyped with C.N.A. when C.N.A. visited Nathaniel's parents. (*Id.* at 20-21). Further, Nathaniel testified that he consulted an attorney in June 2016 "regarding custody and visitation" with C.N.A.

(*Id.* at 38). Nathaniel then relocated to Ohio from Texas in December 2016 "to be with [C.N.A.]" (*Id.* at 37-38).

**{¶15}** On appeal, Brent offers no authority contradicting the trial court's conclusion that Nathaniel's conduct constituted more than de minimis contact. Instead, Brent urges this court to reach the conclusion of the trial court in *In re Adoption of K.C.* that the father failed to provide more than de minimis contact with K.C. because he "failed to seize upon various opportunities to facility [sic] his contact with K.C." (Appellant's Brief at 10). *See In re Adoption of K.C.* at ¶ 17. *In re Adoption of K.C.* is entirely distinguishable from the facts of this case. In this case, unlike *In re Adoption of K.C.*, the trial court concluded that Brent failed to meet his burden of proving that Nathaniel failed to have more than de minimis contact with C.N.A. Accordingly, Brent's argument is erroneous with respect to the appellate review of a trial court's de minimis contact determination under R.C. 3107.07(A). That is, it is the job of an appellate court to review the trial court's de minimis contact determination for an abuse of discretion, not to replace the trial court's decision with its own.

**{¶16}** We conclude Nathaniel made more than de minimis effort to have contact with C.N.A. Stated another way, the record reflects that Nathaniel made more than a minimal effort to contact C.N.A. Therefore, the trial court did not abuse its discretion in concluding that Brent failed to prove that Nathaniel failed to have

more than de minimis contact with C.N.A. for the one-year period preceding Brent's petition for adoption.

**{¶17}** Further, the trial court's alternative conclusion that any failure by Nathaniel to provide more than de minimis contact with C.N.A. was also justified is not against the manifest weight of the evidence. "'""Ohio courts have held that justification of a parent's failure to communicate with his or her child is shown when there has been 'significant interference' with a parent's communication with a child or 'significant discouragement' of such communication."'"" *In re J.P.E.*, 11th Dist. Trumbull No. 2016-T-0113, 2017-Ohio-1108, ¶ 17, quoting *In re M.E.M.*, 11th Lake No. 2010-L-020, 2010-Ohio-4430, ¶ 29, quoting *In re Kr.E.*, 9th Dist. Lorain No. 06CA008891, 2006-Ohio-4815, ¶ 21, citing *In re Holcomb*, 18 Ohio St.3d 361 (1985), paragraph three of the syllabus. "In determining whether a natural parent's failure to have more than de minimis contact was justified, the central question is whether there was a significant interference with visitation and communication and not whether it was possible for the natural parent to have done more to overcome the interference with visitation and communication." *Id.* at ¶ 26, citing *In re S.B.D.*, 2d Dist. Miami No. 2006-CA-25, 2006-Ohio-5133, ¶ 37.

**{¶18}** The trial court concluded that Amanda "elected to take a number of actions to limit access to or communication with her or [C.N.A.]"—that is, Amanda's "conduct was admittedly and intentionally designed to make

[Nathaniel's] contact with [C.N.A.] more difficult." (Doc. No. 32). Again, Brent makes no argument as to how the trial court's alternative conclusion is against the manifest weight of the evidence. Based on our review of the record, we conclude that the trial court's alternative conclusion is not against the manifest weight of the evidence. Stated differently, we conclude that the weight of the evidence supports the conclusion that Amanda significantly interfered with Nathaniel's visitation and communication with C.N.A. *Compare In re J.P.E.* at ¶ 32.

{¶19} Nathaniel testified that he placed "a hundred and ten phone calls" between February 21, 2016 and February 21, 2017 to contact C.N.A. (July 27, 2017 Tr. at 19). According to Nathaniel, "out of the hundred and then [sic] phone calls during that time period, [Amanda] answered the phone one time and called [Nathaniel] back four other times * * * where [he] would've spoke to [C.N.A.]" (*Id.*). He testified that Amanda eventually "blocked [his] number in June" 2016 to prevent him from contacting C.N.A. (*Id.*). Nathaniel testified that Amanda informed Nathaniel's parents "that they weren't allowed to have anything other than supervised visits" after Amanda learned that Nathaniel's parents were permitting C.N.A. to Skype with Nathaniel. (*Id.* at 21). Nathaniel also testified that he purchased a plane ticket "for Easter to come up and see [C.N.A.] for Easter [and to] take him to the zoo" but Amanda "just ignored" Nathaniel and did not permit him to see C.N.A. (*Id.* at 37).

{¶20} Amanda testified that, other than the wrestling meet, Nathaniel did "not ha[ve] any other contact" with C.N.A. (*Id.* at 49). However, she testified that "[t]here would have been one phone conversation in March of 2016. It was right before [C.N.A.'s] birthday" but that "it was not the best conversation that he had with [C.N.A.] because he would try to cut jabs." (*Id.* at 50).

{¶21} Amanda testified that she blocked Nathaniel in June 2016 from being able to call her because Nathaniel was being "derogatory through phone conversations" and because Nathaniel "had [] an argument * * * with Brent." (*Id.* at 56). In particular, she testified that Nathaniel threatened her in December 2015 when he stated to her "[t]hat he [did] not want[] to move to Ohio in fear that he would want to slit [her] throat." (*Id.* at 52). According to Amanda, she sought "legal advice through an attorney" but was advised "not to [] file anything" since Nathaniel lived in Texas at the time. (*Id.* at 53-54). However, Amanda admitted that she continued to communicate with Nathaniel after that incident. (*Id.* at 54). After Amanda blocked Nathaniel from being able to call her, she communicated with Nathaniel through Facebook Messenger. (*Id.* at 56-57). Amanda testified that she did not permit C.N.A. to communicate with Nathaniel over the phone or through Facebook Messenger because of Nathaniel's December 2015 threats and "the * * * comments that he had made in June." (*Id.* at 57, 62).

{¶22} On cross-examination, Amanda testified that she did not permit C.N.A. to Skype with Nathaniel despite Nathaniel's request to Skype with C.N.A. (*Id.* at 66-69). She admitted that she did not respond to Nathaniel's request to see C.N.A. when Nathaniel was in Ohio. (*Id.* at 92-93). Amanda also testified that Nathaniel came to her residence in January 2017 to see C.N.A. but she instructed him "[t]o stay off [her] property." (*Id.* at 100-102). (*See also* Aug. 3, 2017 Tr. at 61-62). Amanda admitted that she did not respond to Nathaniel's inquiry about the date and location of C.N.A.'s wrestling meet; however, Nathaniel "on his own went and found that schedule" and showed up to C.N.A.'s wresting meet. (July 27, 2017 Tr. at 105). After Nathaniel showed up at C.N.A.'s wrestling meet, Amanda did not take C.N.A. to his three remaining wrestling meets that season. (*Id.*).

{¶23} Nathaniel denied that he threatened Amanda. (*Id.* at 45); (Aug. 3, 2017 Tr. at 59). According to Nathaniel, after Amanda alleged that he threatened her, they had "a ton of conversations after that. She, she called [him] and texted [him], [they] have texts about her * * * miscarriages, her problems with Brent, this and that, * * * so [he doesn't] understand how she * * * didn't cut contact off after [the alleged threat]." (July 27, 2017 Tr. at 45). Rather, Amanda "didn't cut contact off until after [C.N.A.'s] last birthday conversation." (*Id.*).

{¶24} The trial court found Amanda's explanation for blocking Nathaniel's communication to be disingenuous. Indeed, Amanda's explanation is ultimately a

credibility determination, which is left to the sound discretion of the trial court. "'A trial court is "free to believe all, part, or none of the testimony of any witness who appears before it."'" *In re Adoption of K.C.*, 2014-Ohio-3985, at ¶ 26, quoting *In re Adoption of M.C.*, 4th Dist. Jackson No. 11CA5, 2011-Ohio-6527, ¶ 19, quoting *Rogers v. Hill*, 124 Ohio App.3d 468, 470 (4th Dist.1998). *See also In re J.P.E.*, 2017-Ohio-1108, at ¶ 39 ("The trial judge was in the best position to determine the credibility of the witnesses and was entitled to believe the testimony of appellee and Mr. Grifa over Brent Erb."). Accordingly, we conclude that the evidence supporting that Amanda significantly interfered with Nathaniel's communication and visitation with C.N.A. is weightier than the evidence that she did not. As such, the trial court's alternative conclusion that any failure by Nathaniel to provide more than de minimis contact with C.N.A. was justified is not against the manifest weight of the evidence.

{¶25} Finally, Brent challenges the trial court's conclusion that he failed to prove that Nathaniel failed to provide for the maintenance and support of C.N.A. for the one-year period preceding Brent's petition for adoption. Again, Brent makes no argument as to how the trial court abused its discretion in making that conclusion.

{¶26} The Supreme Court of Ohio defined "the maintenance and support required by R.C. 3107.07(A) [as] that which is specifically 'required by law or judicial decree.'" *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, at ¶ 20. Under Ohio law, "[t]he biological or adoptive parent of a minor child must

support the parent's minor children out of the parent's property or by the parent's labor." R.C. 3103.03(A). "'Such duty of support is not dependent upon the presence or absence of court orders for support.'" *In re Adoption of K.L.M.*, 10th Dist. Franklin No. 15AP-118, 2015-Ohio-3154, ¶ 12, quoting *In re Adoption of B.M.S.*, 10th Dist. Franklin No. 07AP-236, 2007-Ohio-5966, ¶ 23, citing *Nokes v. Nokes*, 47 Ohio St.2d 1, 5 (1976). "'[A] parent of a minor, has the common-law duty of support as well as a duty of support decreed by court. The judicial decree of support simply incorporates the common-law duty of support.'" *Id.*, quoting *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 305 (1980).

{¶27} "Maintenance and support, in the adoption context, do not simply refer to child support payments or other monetary contributions." *Id.* at ¶ 15, citing *In re Adoption of McNutt*, 134 Ohio App.3d 822, 829 (4th Dist.1999). "Maintenance and support, 'may mean any type of aid to feed, clothe, shelter, or educate the child; provide for health, recreation, travel expenses; or provide for any other need of the child. * * * Supplying shoes, diapers, or any other clothing can constitute support and maintenance.'" *Id.*, quoting *In re Adoptions of Groh*, 153 Ohio App.3d 414, 2003-Ohio-3087, ¶ 20 (7th Dist.2003), citing *In re Adoption of McNutt* at 830. "De minimis monetary gifts from a biological parent to a minor child do not constitute maintenance and support, because they are not payments as required by law or judicial decree as R.C. 3107.07(A) requires." *In re Adoption of M.B.* at ¶ 20.

{¶28} The trial court concluded that (1) "[t]here is no judicial order for support" because Amanda "elected to make no application for support" and (2) Amanda and Nathaniel "are co-owners of a certain piece of rental real estate and that, during the applicable period in question, she has been receiving the full rental payment for the property" as "support for [C.N.A.]" (Doc. No. 32). The record supports the trial court's findings.

{¶29} Indeed, the parties testified that Nathaniel provided money to Amanda to purchase homes in Springfield, Ohio for use as rental properties to generate income for Amanda while Nathaniel was in prison. (July 27, 2017 Tr. at 31, 77-79); (Aug. 3, 2017 Tr. at 45-51). The parties testified that the rental income was used as support for C.N.A. (July 27, 2017 Tr. at 31-32); (Aug. 3, 2017 Tr. at 51, 54, 62-63). (*See also* July 27, 2017 Tr. at 81). That evidence alone demonstrates that Nathaniel provided for the maintenance and support of C.N.A. as required by law. *See In re Adoption of McNutt* at 829-830 ("Moreover, a 'meager' amount of support is sufficient to avoid a finding that the parent's consent is not required."), citing *In re Bryant*, 4th Dist. Washington No. 97CA635, 1997 WL 766460, *6 (Dec. 9, 1997), *Celestino v. Schneider*, 84 Ohio App.3d 192, 197 (6th Dist.1992) ("father's payment of $36 to CSEA precluded a finding of failure to provide maintenance and support"), *Vecchi v. Thomas*, 67 Ohio App.3d 688, 691 (2d Dist.1990) ("father's payment of $130 to CSEA precluded a finding of failure to provide maintenance

and support"), *In re Adoption of Salisbury*, 5 Ohio App.3d 65, 67 (10th Dist.1982); *In re Adoption of Dea*, 11th Dist. Lake No. 92-L-120, 1994 WL 102390, *2 (Mar. 25, 1994), and *In re Adoption of Mills*, 12th Dist. Warren No. CA93-04-036, 1993 WL 430473, *2 (Oct. 25, 1993). *See also In re Adoption of M.B.* at ¶ 26.

> **{¶30}** Moreover, Nathaniel testified that he
>
> offered to give [Amanda] money, * * * and every time [he made] any
>
> kind of offer, * * * it was met with we don't need it. But there was
>
> multiple offers made for soccer cletes [sic], for Halloween costumes,
>
> * * * there was multiple offers.

(July 27, 2017 Tr. at 36). (*See also* Aug. 3, 2017 Tr. at 55-56, 60). Amanda admitted that Nathaniel offered to buy shoes and offered to pay for school for C.N.A. (July 27, 2017 Tr. at 57, 71, 97). (*See also* July 27, 2017 Tr. at 91-92).

**{¶31}** The above evidence demonstrates that Nathaniel "made a financial contribution that comports with the requirements of R.C. 3107.07(A) to contribute maintenance and support" for C.N.A. *In re Adoption of M.B.* at ¶ 23. Therefore, the trial court did not abuse its discretion by concluding that Brent failed to prove that Nathaniel failed to provide for the maintenance and support of C.N.A. for the one-year period preceding Brent's petition for adoption.

**{¶32}** For the foregoing reasons, we hold that the trial court did not err in concluding that Nathaniel's consent to Brent's adoption of C.N.A. is required under R.C. 3107.07(A).

**{¶33}** Brent's assignment of error is overruled.

**{¶34}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**